CITY OF KINGSPORT et al.,
Appellants,

v.

STATE of Tennessee ex rel. the CROWN
ENTERPRISES, INC., et al., Appellees.

Supreme Court of Tennessee.

Feb. 21, 1978.

Ward Huddleston, Jr., W. E. Weber, Jr., Kingsport, for appellants.

Ernest F. Smith, Edwin O. Norris, Steven C. Rose, Hunter, Smith, Davis, Norris, Treadway & Hadden, Kingsport, for appellees.

## OPINION

HENRY, Chief Justice.

This is a suit in the nature of a quo warranto proceeding instituted pursuant to Sec. 6–310, T.C.A., to contest the validity of an annexation ordinance of the City of Kingsport. The trial judge invalidated the ordinance. We reverse.

### I.

### *The Annexed Territory*

The annexation ordinance was duly and regularly passed by the governing body of the City of Kingsport, and all statutory procedural requirements have been met.

The ordinance provides for the annexation of 806 acres situated generally astride U. S. Highway 11W (Stone Drive) and lying generally west and southwest of John B. Demis By-pass. These are two main arterial highways in Kingsport.

Lying south of Stone Drive are a number of retail and wholesale commercial establishments. Behind these establishments, and extending generally along the southern border of the annexed area, runs Reedy Creek. The record reveals that the flood plain of this stream, containing some 73 acres, is of significant importance to the City as a whole, and particularly to the business establishments located on the south side of Stone Drive.

The situs of a substantial portion of the annexed property is north of Stone Drive. Included within this is a tract containing approximately 309 acres which is the site of a planned extension of an exclusive residential subdivision.

Also included within the area north of Stone Drive, but not contiguous thereto, is a tract of 63 acres purchased by the Sullivan County Board of Education upon which it is planned to construct a new high school.

Abutting upon Stone Drive to the north is an 85 acre tract owned by Crown Enterprises, a diversified corporation consisting of about ten divisions.

Its principal subsidiary is Mason and Dixon Lines (M&D), one of the nation's largest trucking companies. This 85 acre tract, leased by Crown to M&D, serves as M&D's home office and as the nerve center of its operations, which are nationwide in dimension. In addition to its main office building, it also operates on this site a building-supply building, a terminal building and a maintenance-transportation building.

This 85 acre tract is wholly within the 806 acre annexed territory and is surrounded by the remaining 721 acres.

A major issue in the court below was whether M&D's Kingsport operation was

"industrial" within the meaning and scope of Sec. 6–310, T.C.A. For reasons pointed out hereinafter we think its classification is of no critical significance. However, to clarify this issue, we hold that M&D's property is industrial in nature.[1] The City of Kingsport so classified it for zoning purposes, electing not to treat it as commercial. We see no essential difference between zoning and annexation classifications. Indeed, a principal purpose of annexation is to govern land use by the application of sound zoning practices.

Other property is involved, but the foregoing recitations are sufficient to present the problem. Additionally it should be noted that the annexed area contains no residential units at this time.

M&D does not challenge the overall annexation plan; but it vigorously objects to the inclusion of the 85 acre tract, which consists of approximately 10.6% of the total area. Its principal insistence is that it is an "industrial plant development" within the meaning of Sec. 6–310, T.C.A.; that the sole purpose of the annexation is to increase municipal revenue; and that M&D does not need any municipal services.

In this connection it contends that it is self-sufficient from a standpoint of the usual city services and that the total annexation will result in additional revenue of approximately $85,210.00, 56% of which would be paid by M&D and Crown.

There is no disputed material fact.

## II.

### The Burden of Proof

A substantial part of the record in this case is devoted to proof designed to establish that M&D's activity is industrial in character and, therefore, Sec. 6–310, T.C.A. comes into play to place the burden of proof squarely on the City.

As a predicate for further discussion, we here quote the pertinent part of Sec. 6–310, T.C.A.:

Should the territory hereafter sought to be annexed be the site of substantial industrial plant development, a fact to be ascertained by the court, the municipality shall have the burden of proving that the annexation of the site of the industrial plant development is not unreasonable in consideration of the factors above mentioned, including the necessity for, or use of municipal services by the industrial plant or plants, and the present ability and intent of the municipality to benefit the said industrial plant development by rendering municipal services thereto when and as needed. The policy and purpose of this provision is to prevent annexation of industrial plants for the sole purpose of increasing municipal revenue, without the ability and intent to benefit the area annexed by rendering municipal services, when and as needed, and when such services are not used or required by the industrial plants.

We think that much of this controversy could have been eliminated had due regard been given to the history of Sec. 6–310, T.C.A.

Prior to the enactment of Chapter 113, Public Acts of 1955 (carried into the Code as Sec. 6–308, et seq.), the sole and exclusive method of extending the boundaries of a municipal corporation was by legislative action. The 1955 Act delegated the legislative authority of annexation to the municipalities of the state. That authority could be exercised by the municipality by ordinance, passed either upon the initiative of its governing body, or pursuant to a petition signed by a majority of residents and property owners in the affected area. Annexation by referendum was also provided for.

In the initial act aggrieved property owners were given the right to contest the

---

1. In *Crown Enterprises, Inc. v. State Bd. of Equalization*, 543 S.W.2d 583 (Tenn.1976), we held that the Nashville Terminal of Mason and Dixon Lines was "public utility property" within the purview of the Property Assessment and Classification Act. We reached this conclusion by classifying the property "according to use", for purposes of ad valorem taxation. Wholly different considerations are involved in annexation suits.

validity of the annexation on the ground that "it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law." See Sec. 6–310.

This provision produced a series of cases articulating the "fairly debatable" standard.

The first case to construe the provision was *Witt v. McCanless,* 200 Tenn. 360, 292 S.W.2d 392 (1956). There the Court correctly noted that the power of annexation is legislative in character, the Court's only duty being to determine the reasonableness of the annexation ordinance.

Thereafter, there came before the Court the leading case construing the annexation-by-ordinance statutes, *Morton v. Johnson City,* 206 Tenn. 411, 333 S.W.2d 924 (1960). There the proof was conflicting, and perhaps the reasonableness of the annexation might be classified as marginal. In sustaining the annexation, the Court again recognized that annexation was legislative or political in character and pointed out that the courts should not interfere in such matters. Specifically, the Court said:

> [T]he correct legal principle to apply is . . . if it is a fairly debatable question as to whether or not the ordinance is reasonable or unreasonable the courts certainly are not going to take any hand in it one way or the other.

206 Tenn. at 426, 333 S.W.2d at 930.

It is evident that the "fairly debatable" standard would result in upholding all annexations except those characterized by blatant bad faith.

In *State v. City of Columbia,* 208 Tenn. 59, 343 S.W.2d 888 (1961), the Court followed *Morton, supra,* equating the act of the city governing body with the act of the legislature and holding that "an annexation, so long as it complies with the statute, has the same force and effect and is subject to the same attacks, only as annexation would be if done by the Legislature." *Id.* at 61–62, 343 S.W.2d at 889. The Court further noted the presumption in favor of

the ordinance and that those who contest it have the burden of proving it to be unreasonable.

Next in chronological order, we note Chapter 220, Public Acts of 1961, sometimes known as the industrial amendment. This act (see paragraph 5, Sec. 6–310, T.C.A.) governs the annexation of industrial property and provides, in relevant part, that "the municipality shall have the burden of proving that the annexation . . . is not unreasonable."

This Court reiterated the "fairly debatable" standard in *State v. City of Jackson,* 218 Tenn. 322, 403 S.W.2d 304 (1966), and again in *State v. Mayor and Aldermen of Morristown,* 222 Tenn. 21, 431 S.W.2d 827 (1968). In the latter case the Court responded to the argument that all annexations are fairly debatable and, therefore, this standard "destroys judicial review" thusly:

> The rule does not destroy judicial review, but limits its scope to the court's determining *whether the proposed annexation is so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of delegated legislative power.* It is stated in 37 Am.Jur., Municipal Corporations, Sec. 28, that annexation is exclusively a legislative power and great latitude must necessarily be accorded the legislative discretion. *The fairly debatable rule does no more than insure this latitude of legislative discretion.* (Emphasis supplied).

222 Tenn. at 27, 431 S.W.2d at 829.

Perhaps the strongest statement on the limitation on court review of annexation will be found in *State v. City of Memphis,* 224 Tenn. 514, 457 S.W.2d 532 (1970):

> [T]he Legislature has plenary power to alter municipal boundaries and absent constitutional restraint, such is *not open for review by the courts.* The Legislature in enacting Chapter 113, Public Acts of 1955, delegated this power to the municipalities with certain restrictions contained in the statute. (Citations omitted). The Legislature then could have

delegated to the municipalities the authority to annex *with no right of judicial review* absent constitutional restraint. Appellants by T.C.A. sec. 6–310 were given a right, not a remedy. (Citation omitted). (Emphasis supplied)

224 Tenn. at 519, 457 S.W.2d at 534.

This was the condition of our law when the legislature adopted Chapter 753, Public Acts of 1974, which added to the first paragraph of Sec. 6–310 the following:

> *The municipality shall have the burden* of proving that an annexation ordinance is reasonable for the overall well-being of the communities involved. (Emphasis supplied).[2]

This legislative enactment destroyed all presumptions of validity and demolished the "fairly debatable" rule. As we recently held in *Pirtle v. City of Jackson,* Tenn., 560 S.W.2d 400 (Opinion filed Dec. 19, 1977), a Tennessee municipality "has the burden of proving the reasonableness of its annexation ordinances."

We note that the "fairly debatable" standard was applied in *State ex rel. Hudson v. City of Chattanooga,* 512 S.W.2d 555 (Tenn. 1974), and again in *State ex rel. Hicks v. City of Chattanooga,* 513 S.W.2d 780 (Tenn. 1974). The decision in each of these cases was dated July 29, 1974. Chapter 753, Public Acts of 1974 became effective April 5, 1974, approximately 115 days prior thereto. It is evident that these cases were disposed of under the law as it existed prior to the enactment of the 1974 statute.

The demise of the "fairly debatable" rule is not fairly debatable.

As we stated earlier, we do not consider the industrial classification to be of critical significance. Under the 1974 amendment the burden is on the City to prove that *"an annexation ordinance is reasonable"*; under the industrial amendment the burden is on the City to prove that the ordinance *"is not unreasonable."* The difference is purely a matter of semantics.

## III.

### The Industrial Amendment

■ In order to trigger the statute, the *"territory"* to be annexed must *"be* the *site* of substantial industrial plant development." It is not enough that it "include" or "involve" or "embrace" an industrial development; it must *be* the development. This statute has no application in any annexation case wherein an industrial development is included within a larger area or territory annexed in good faith, and in accordance with acceptable principles governing annexation.

■ We hold in this case that while M&D is an industrial development, it is not the "territory sought to be annexed," but only a relatively small portion thereof.

This holding precludes the application of the industrial amendment; however, the burden is on the municipality to show that the proposed annexation is "not unreasonable in consideration of the health, safety and welfare of . . . the citizens and property owners of the municipality." (See par. 3, sec. 6–310).

■ With or without the fifth paragraph of Sec. 6–310, factors to be taken into consideration in testing the reasonableness of any annexation ordinance would include:

  a.  the necessity for, or use of, municipal services;

  b.  the present ability and intent of the municipality to render municipal services when and as needed;

  c.  whether the annexation is for the sole purpose of increasing municipal revenue without the ability and intent to benefit the annexed area by rendering municipal services.

We test this annexation against these criteria.

## IV.

### The Reasonableness of the Annexation

As we noted at the outset, the relevant facts essentially are not in dispute. It is

---

**2.** Exemption of designated municipalities from this act, was declared to have no rational basis

and to be unconstitutional in *Pirtle v. City of Jackson, infra.*

the conclusion to be drawn from those facts that has created this controversy. The record is voluminous; some of the evidence was pertinent.

The trial judge found facts as follows:

a. that there are no residential dwellings on the annexed property. We agree.

b. that Preston Farm Associates intends to develop its 309 acres as a residential subdivision. We agree.

c. that Sullivan County owns a 63 acre tract where a new high school is to be constructed. We agree.

d. that Crown Enterprises and Mason & Dixon are substantial corporate entities, employing large numbers of persons in the Kingsport area and paying substantial taxes. We agree.

e. that M&D has an adequate sewage treatment plant and its connection with the city sewer line is unnecessary. We agree.

f. that the annexation study report shows that the 806 acre territory is in need of zoning and other municipal service in order to coordinate an orderly development of the entire area. We agree that the report so shows and we accept this to be a fact.

g. that the City of Kingsport has adequate service in the areas of police protection, fire protection, education, planning, traffic engineering and refuse collection, all of which could be extended to the annexed area. We agree.

h. that the city plans to expend approximately $321,000.00 to extend city sewer and water lines into the annexed area. We agree.

i. that the total tax revenue accruing to the city from the annexed property would be $85,281.00, of which appellees would pay approximately fifty-six percent. We agree.

j. that "the *site* in question constitutes a *site* of substantial industrial development." We agree that M&D is a *site* of substantial industrial development.

After finding the site to be industrial, the trial judge's memorandum reads as follows:

Having so found, it further appears that the statute does not provide complete immunity from the reach of annexation ordinances but only in situations where it appears that industrial plants are being annexed for revenue purposes and with no significant benefit to the industry. As to whether or not the annexation is for revenue purposes, a numbers (sic) of factors must be considered in addition to the industry's contribution in tax payments.

After examining all of the evidence in this very lengthly (sic) record and after reviewing the considerations and requirements of the annexation statutes, the court finds that the City has failed to carry the burden of proof as defined under T.C.A. 6–310, paragraph 5.

In so holding and finding, this conclusion does not support any finding of bad faith or wrongful intent upon the members of the city council or other city officials but does support the finding that the practical result and effect of the ordinance is to violate the express purpose of the statute.

It is evident that the trial judge based his judgment upon the following conclusions:

1. that the site of M&D's operations is industrial;

2. that M&D provided virtually all of its own services;

3. that the annexation of the M&D property was solely for the purposes of obtaining additional tax revenue with no significant benefit to the industry.

The trial judge does not specifically point out wherein the City failed to carry the burden of proof or precisely why the result of the ordinance was to violate the express purpose of the statute.

■ The self-evident purpose of the industrial amendment is to prevent the annexation of a substantial industrial plant development without consideration being given to four areas; viz.:

a. whether the annexation is necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole. See Sec. 6–310, T.C.A., first paragraph;

b. the necessity or use of municipal services;

c. the present ability and intent of the municipality to render the service, when and as needed;

d. the annexation must not be for the sole purpose of increasing municipal revenue with the corresponding ability or intent to render municipal services.

■ This annexation passes muster under these criteria, which are applicable to all annexations.

The basic fallacy in the trial judge's conclusion is that he treated the controversy as if the Crown–M&D property were the only territory being annexed as opposed to being but a small portion of a substantially larger territory being annexed in good faith.

We find from the record that this annexation is necessary for the welfare of the property owners in the affected territory as well as the municipality as a whole.

The whole theory of annexation is that it is a device by which a municipal corporation may plan for its orderly growth and development. Heavily involved in this is control of fringe area developments and zoning measures to the end that areas of unsafe, unsanitary and substandard housing may not "ring" the City to the detriment of the City as a whole. In a word, annexation gives a city some control over its own destiny. The preservation of property values, the prevention of the development of incipient slum areas, adequate police protection within a metropolitan area, and the extension of city services to whose who are already a part of the city as a practical proposition, are the legitimate concern of any progressive city.

■ We are not impressed by the argument that Crown Enterprises and Mason & Dixon do not use or need city services. All that is required is that consideration be given to the necessity for or use of city services and that they be available "when and as needed." This latter phrase would indicate that the legislature realized that some annexed areas would not at the time need any city services.

The whole process of annexation would be frustrated if the city could only annex those properties then in need of city services. The result of this would tend to create islands of unincorporated areas within a city and the archipelagic monstrosity thus created would thwart the rendition of essential city services and would not be in the public interest.

■ Appellees do not contest the annexation of the remaining property. Should we uphold their contention the result would be the creation of an 85 acre island or enclave, completely surrounded by the City of Kingsport. The area thus omitted would be within, but not a part of a city. Absent the most compelling considerations, such a situation would be intolerable and an annexation that produced such a result would not meet the test of reasonableness.[3]

■ We have no hesitancy in holding that any annexation having as its *sole* purpose the collection of additional revenues is totally void. We do not here have such a case. See *State ex rel. Spoone v. Mayor and Alderman of Morristown,* 222 Tenn. 21, 431 S.W.2d 827 (1968).

When consideration is given to the entire record, we are fully persuaded that the annexation ordinance under consideration represents a fair, reasonable and responsible effort of the City of Kingsport to cause its municipal boundaries to keep apace of the growth and development of the city.[4]

---

3. See Annot., 49 A.L.R.3d 589, 644–646 (1973). See also *Town of Fond Du Lac v. City of Fond Du Lac,* 22 Wis.2d 533, 126 N.W.2d 201 (1964).

4. We note that the City of Kingsport had a population, according to the 1940 census, of 14,404. The latest Tennessee Blue Book reports a 1974 population of 31,938, or a growth of 121.7% during the last quarter of a century.

To the extent of the issues involved in this suit, we declare the ordinance in question to be valid. We note that another suit challenging the same ordinance now pends in the trial court. The principles we announce here will be controlling in that suit; however, differing issues may be involved and we do not consider it appropriate to finally adjudicate the full validity of this ordinance until the parties to the pending suit shall have been heard fully.

The decision of the trial court is reversed and this action is remanded for the entry of such decree, and at such time, as may be appropriate.

FONES, COOPER, BROCK and HARBISON, JJ., concur.