# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### APRIL 2000 Session

## EDGAR AND MARY MULROONEY, ET AL. v. TOWN OF COLLIERVILLE, TENNESSEE, ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. 103683-1;  The Honorable Walter L. Evans, Chancellor

---

No.  W1999-01474-COA-R3-CV - September 14, 2000

---

This appeal arises from a quo warranto action filed by the Mulrooneys ("Property Owners") on behalf of residents of subdivisions annexed by Collierville ("Town").  Property Owners claimed that Town did not meet the statutory requirements needed to annex the subdivisions. The jury returned a verdict on behalf of Town, finding that the annexation was proper.  Thereafter, Property Owners filed a motion for new trial which was denied by the court.  Property Owners appeal.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., and LILLARD, J., joined.

Dan M. Norwood, Memphis, for Appellants

Charles B. Welch, Jr., Jon F. Minkoff, Memphis, for Appellees

**OPINION**

Pursuant to Tenn. Code Ann. § 6-51-102,[1] Town can annex nearby property despite objections of property owners if Town can show there is a danger (1) to the prosperity of both areas, or (2) to the safety and welfare of the inhabitants and property owners of both areas if the areas are not annexed. Under this statute, there must be public notice and a hearing held on the matter before the property can be annexed. In 1993, Town, acting through its legislative body, adopted an annexation ordinance which provided for annexation of two neighboring subdivisions. The ordinance stated that annexation was necessary for the welfare of the residents of the subdivisions as well as Town residents.

At a public hearing on the matter, Town presented evidence from a state annexation feasibility study as well as a plan of services prepared by the town planner. According to the feasibility study, Town would be able to offer better and quicker police, fire, and emergency services than the county services available if the subdivision remained unannexed. Following a unanimous vote on the matter, the annexation took place. In response, Property Owners filed a quo warranto action as provided for in Tenn. Code Ann. §6-5-103[2] to challenge the annexation.

---

[1]Tenn. Code Ann. § 6-51-102 provides in relevant part (emphasis added):

(a)(1) A municipality, when petitioned by a majority of the residents and property owners of the affected territory, *or upon its own initiative when it appears that the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property endangered, after notice and public hearing, by ordinance, may extend its corporate limits by annexation of such territory adjoining its existing boundaries as may be deemed necessary for the welfare of the residents and property owners of the affected territory as well as the municipality as a whole*; provided, that the ordinance shall not become operative until thirty (30) days after final passage thereof.

[2]Tenn. Code Ann. § 6-51-103 provides in relevant part:

(a)(1)(A) Any aggrieved owner of property which borders or lies within territory which is the subject of an annexation ordinance prior to the operative date thereof, may file a suit in the nature of a quo warranto proceeding in accordance with this part, § 6-51-301 and title 29, chapter 35 to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law. Notwithstanding the provisions of any other section in this chapter, for purposes of this section, an "aggrieved owner of property" does not include any municipality or public corporation created and defined under title 7, chapter 82 which owns property bordering or lying within the territory which is the subject of an annexation ordinance requested by the remaining property owner or owners of the territory and whose property and services are to be allocated and conveyed in accordance with § 6-51-111, § 6-51-112 or § 6-51-301, or any contractual arrangement otherwise providing for such allocation and conveyance.

(B) The provisions of this subdivision (a)(1) do not apply to the counties covered by subdivision (a)(2).

(2)(A) Any aggrieved owner of property, lying within territory which is the subject of an annexation ordinance prior to the operative date thereof, may file a suit in the nature of a quo warranto proceeding in accordance with this part, § 6-51-301 and title 29, chapter 35 to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole, and so constitutes an exercise of power not conferred by law.

(B) The provisions of this subdivision (a)(2) shall apply only in counties having a metropolitan form of government and in counties having populations of:

(continued...)

In September 1997, a jury trial on the matter was held in the Shelby County Chancery Court. Town presented the following evidence regarding the added benefits to the annexed area. Town's mayor testified about the growing size and industry of Town and the positive effects of the annexation. In addition, the mayor testified that most of the residents of the annexed areas were in favor of annexation and the areas were "better off" annexed. Town's city planner testified about the annexation feasibility study and the plan of services for the annexed area. The plan of services indicated that Town's emergency response system, police department, and fire department would be expanded. In addition, Town's fire and police chiefs, city engineer, and director of public works presented testimony to the same effect. A board member of one of the annexed subdivisions' Home Owners Association testified that the majority of residents and the entire board supported the annexation.

Following the presentation of evidence, the jury returned a verdict in favor of Town. A final order to this effect was entered by the chancellor[3] on October 9, 1997. Property Owners filed a motion for new trial, alleging that the jury verdict was contrary to the clear weight of the evidence because Town had failed to present the proof required under Tenn. Code Ann. §6-51-102. After the motion for new trial was denied, Property Owners filed this appeal.

On appeal, Property Owners assert that the trial court erred in failing to grant the motion for new trial. In addition, Property Owners claim that Town failed to present the evidence required for

---

[2](...continued)

| not less than | nor more than |
| ------------ | ------------ |
| 4,000 | 4,300 |
| 14,940 | 15,000 |
| 43,700 | 44,700 |
| 49,400 | 49,500 |
| 58,000 | 59,000 |
| 67,300 | 67,400 |
| 74,500 | 74,600 |
| 100,000 | 250,000 |
| 475,000 | 480,000 |
| 700,000 | |

according to the 1980 federal census or any subsequent federal census, and in any county with a population of not less than two hundred eighty-five thousand (285,000) and not more than two-hundred ninety thousand (290,000) based upon the 1980 federal census.

(b) The municipality shall have the burden of proving that an annexation ordinance is reasonable for the overall well-being of the communities involved.

[3]Chancellor Neal Small served as judge for the trial below and entered a final order approving the jury verdict. Small was subsequently replaced by Walter Evans. Chancellor Evans ruled on Property Owners' motion for new trial. Property Owners assert that the new chancellor was not qualified to rule on the motion for new trial because he did not preside over the actual trial. We find this argument is without merit.

annexation under Tenn. Code Ann. § 6-51-102 and that therefore the jury verdict is not supported by material evidence.

## ANALYSIS

Upon review, this court does not reweigh the evidence and consider where the preponderance lies. Instead, we determine whether there is any material evidence to support the verdict, and, if there is, we must affirm the judgment. TENN. R. APP. P. 13(d); Overstreet v. Shoney's, Inc., 4 S.W.3d 694, at 718 (Tenn. Ct. App. 1999) citing Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822, 823 (Tenn.1994). Even if we would have reached conclusions different from those reached by the jury, if there is some material evidence to support the verdict, it must be affirmed. Mason v. Tennessee Farmers Mut. Ins. Co., 640 S.W.2d 561, at 564 (Tenn. Ct. App. 1982) With the foregoing in mind, we now turn to the case at bar.

### A. Motion for New Trial

On appeal, Property Owners assert that the trial court erred in failing to grant the motion for new trial. Property Owners claim the jury verdict was contrary to the great weight of evidence and accordingly the trial court should have set aside the verdict. We do not agree. Based on the following, we find that the court did not err in denying the motion for new trial.

"The purpose of a motion for a new trial is to call the trial judge's attention to errors of the jury in deciding a case and to his own errors in presiding over a jury trial, all in the hope that he can correct them without the necessity for appellate review." Bryant v. Central Motor Exp., Inc., 404 S.W.2d 513, at 518 (Tenn. 1966). A trial court is given wide latitude in granting a motion for new trial, and a reviewing court will not overturn such a decision unless there has been an abuse of discretion. Loeffler v. Kjellgren, 884 S.W.2d 463, 468 (Tenn. Ct. App. 1994). In other words, the refusal to grant a motion for new trial is a discretionary decision of the trial judge. Esstman v. Boyd, 605 S.W.2d 237, 240 (Tenn. Ct. App. 1979); Seay v. City of Knoxville, 654 S.W.2d 397, 398-399 (Tenn. Ct. App. 1983); Miller v. Altman Const. Co., 666 S.W.2d 466, 468 (Tenn. App. 1983). On appeal, our review is limited to determining whether the trial court abused its discretion in making this decision. Herbert v. Brazeale, 902 S.W.2d 933, 936 (Tenn. Ct. App.1995); Ladd by Ladd v. Honda Motor Co., Ltd., 939 S.W.2d 83, 104 (Tenn. App. 1996).

The abuse of discretion standard involves two considerations. Primarily it indicates that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers. In addition, it indicates that the appellate court will not interfere with the trial court's decision simply because it did not choose the alternative the appellate court would have chosen. BIF, a Div. of General Signals Controls, Inc. v. Service Const. Co., Inc., No. 87-136-II, 1988 WL 72409, at *2-*3, (Tenn. Ct. App. 1988) citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex.1985); Southern Fire & Cas. Co. v. Cooper, 200 Tenn. 283, 286, 292 S.W.2d 177, 178 (1956). Under this standard, Property Owners must prove that the lower court abused its discretion by failing to grant their motion for new trial.

Property Owners focus on Town's failure to use the specific terms "the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property endangered" as provided in Tenn. Code Ann. §6-51-102. However, the overwhelming evidence supported Town's argument that annexation was beneficial to the welfare of both Town and the affected subdivisions. Therefore, while Town may not have couched its argument and presentation of evidence in the precise statutory terms, Town's trial proof reflected the welfare benefits produced by annexation.[4] Accordingly, we find that the trial court did not abuse its discretion in denying the motion for new trial.

## B. Material Evidence

Property Owners also assert there is no material evidence to support the jury's verdict. Again, Property Owners rely on the failure of Town's witnesses to use the terms provided by the annexation statute. As stated above, the failure to use these precise terms is not in and of itself error and does not prevent the jury, the trial judge, or this Court from understanding the evidence. Town's evidence about the positive effect of the annexation on the welfare of the residents included testimony by Town's mayor, Town's city planner, Town's fire and police chiefs, city engineer, and director of public works. Accordingly, the evidence presented at trial indicates that Town complied with the statutory requirements for annexation of the affected subdivision. Therefore, there is material evidence supporting the jury's verdict.

CONCLUSION

---

[4] Factors to be considered in testing reasonableness of annexation ordinance include: necessity for, or use of, municipal services; present ability and intent of municipality to render municipal services when and as needed; and whether annexation is for sole purpose of increasing municipal revenue without ability and intent to benefit annexed area by rendering municipal services. City of Kingsport v. State ex rel. Crown Enterprises, Inc., 562 S.W.2d 808 (Tenn. 1978) The primary test is the planned and orderly growth and development of the city, taking into consideration the characteristics of the existing city and those of the area proposed for annexation. State ex rel. Collier v. City of Pigeon Forge, 599 S.W.2d 545, 548 (Tenn. 1980)

For the foregoing reasons, the lower court's denial of Property Owners' Motion for New Trial is affirmed. Costs of this appeal are taxed to Edgar and Mary Mulrooney, et al, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE