IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 27, 2015 Session

## ONEIDA FARMS DEVELOPMENT, INC. v. TOWN OF HUNTSVILLE

**Appeal from the Chancery Court for Scott County**
**No. 10259     Elizabeth C. Asbury, Chancellor**

_____

### No. E2014-02179-COA-R3-CV-FILED-NOVEMBER 16, 2015

_____

This case involves a *quo warranto* action challenging the validity and reasonableness of an annexation ordinance. The trial court determined that, pursuant to Tennessee Code Annotated § 6-58-111, the plaintiff failed to prove that (1) the annexation ordinance was unreasonable for the overall well-being of the communities involved or (2) the health, safety, and welfare of the citizens and property owners of the municipality and territory would not be materially retarded in the absence of such annexation. The court therefore dismissed the plaintiff's complaint. The plaintiff timely appealed. Discerning no error, we affirm the trial court's judgment. Pursuant to an issue raised by the defendant, we also determine the plaintiff's complaint to have been timely and properly filed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

C. Patrick Sexton, Oneida, Tennessee, for the appellant, Oneida Farms Development, Inc.

Jon G. Roach, Knoxville, Tennessee, for the appellee, Town of Huntsville.

### OPINION

#### I. Factual and Procedural History

On August 17, 2011, the Town of Huntsville ("the Town") initiated annexation proceedings involving certain properties located within the Town's approved urban growth boundary. One such affected property, nominated Parcel 10, is owned by the plaintiff, Oneida Farms Development, Inc. ("OFDI"). OFDI's parcel consists of approximately 1,800 acres of raw, unimproved land and contains only dirt logging roads.

This property is contiguous to the Town's boundary and surrounds the Town's water reservoir.

On August 24, 2011, the Town's Board of Mayor and Aldermen met in regular session and adopted Resolution 11-08-01, approving the plan to annex the subject property. The Town's Board of Mayor and Aldermen also adopted Resolution 11-08-04, approving a plan of services that would be provided to the affected property. The services to be provided included fire protection, garbage collection, maintenance of any paved roads that might be built, and inspection services. A public notice was placed in the *Independent Herald*, a newspaper of general circulation in Scott County, on September 1, 2011.

On September 23, 2011, OFDI filed a Complaint for Declaratory Action, thereby initiating the instant action. OFDI sought a temporary restraining order preventing the second reading and adoption of the annexation ordinance. The trial court denied OFDI's request for injunctive relief. On September 28, 2011, the Town adopted Ordinance 11-08-01, annexing the property, as well as Resolution 11-08-04, approving the proposed plan of services. The Town filed a Motion for Summary Judgment in the instant action on November 21, 2011, which was denied by the trial court. The Town thereafter sought an interlocutory appeal regarding the ruling pursuant to Tennessee Rule of Appellate Procedure 9. Although the trial court granted an interlocutory appeal, this Court denied that request.

The trial court conducted a bench trial in this matter on September 17, 2014. George Potter, the Town's Mayor, testified regarding the significance to the Town of annexing the property in question. Mayor Potter related that the Town began planning to annex the subject property in 2004 in order to protect the lake and the Town's water supply. According to Mayor Potter, although the property was raw and undeveloped at the time, the Town determined that it was important to "get ahead" of any development so as to minimize the potential impact on the water reservoir. Mayor Potter explained that the Town would provide numerous services, including fire protection, sewer, garbage collection, street maintenance, street lighting, and inspections. Because the Town would only collect $875 in property taxes on the subject property, Mayor Potter stated that this would be such a miniscule portion of the Town's overall revenue collection as to have had no bearing on the Town's decision.

Daniel Billingsley testified on behalf of OFDI as one of the officers of the corporation. Mr. Billingsley reported that OFDI had no intention of developing the land for any use other than cutting timber because the expense associated with residential development would be too great. Although Mr. Billingsley admitted that a sewer line had been installed through the property, he insisted that OFDI had no use for sewer

2

connections as there were no structures on the land. Accordingly, OFDI also had no need for electricity, water, garbage collection, street maintenance or lighting, or police protection. Mr. Billingsley stated that fire protection would only protect against a forest fire, which was of no concern to OFDI.

Mr. Billingsley acknowledged that the property's subjection to the Town's planning commission rules would have no bearing on his ability to harvest timber. Mr. Billingsley further acknowledged that if OFDI purposed to sell the property in the future, having access to the sewer line would be of value. According to Mr. Billingsley, he "committed to the people of Scott County" that if the land was developed, "it ought to be in the Town of Huntsville." Mr. Billingsley further explained that should any type of residential development take place, annexation resulting in the provision of fire protection, street maintenance, and other services would be beneficial to the property owners.

Having taken the matter under advisement, the trial court entered an order on September 26, 2014, incorporating its memorandum opinion. The court determined, *inter alia*, that because the area annexed was within the Town's urban growth boundary, the provisions of Tennessee Code Annotated § 6-58-111 would apply. Pursuant to Tennessee Code Annotated § 6-58-111(a), OFDI was required to prove that: (1) the annexation ordinance is unreasonable for the overall well-being of the communit[y] involved, or (2) [t]he health, safety, and welfare of the citizens and property owners of the municipality and territory will not be materially retarded in the absence of such annexation.

The trial court found that the property in dispute adjoined the Huntsville Utility District Reservoir, which supplied water to the Town and surrounding areas. As such, the court also determined that protection of this lake reservoir was necessary for the public health, safety, and welfare of the Town's citizens. The court further found that the Town had committed to provide services to the annexed property, including sewer, garbage collection, street maintenance, inspections, and a zoning plan. The court noted that OFDI's representative, Mr. Billingsley, acknowledged that in the event of future development, it would be beneficial for the property to be annexed. Further, the court found a dearth of evidence that annexation was solely to increase the Town's revenue inasmuch as the tax revenue from OFDI's property would be only $875 per year.

Based on the evidence presented, the trial court concluded that OFDI had failed to prove that (1) the annexation ordinance was unreasonable for the overall well-being of the community, or (2) the health, safety, and welfare of the citizens and property owners of the municipality would not be materially retarded in the absence of such annexation. The court therefore entered a judgment dismissing OFDI's complaint. OFDI timely

appealed.

## II. Issues Presented

OFDI presents the following sole issue for our review:

1. Whether the trial court erred in determining that OFDI failed to prove that the annexation ordinance was unreasonable.

The Town presents the following additional issue:

2. Whether OFDI's Complaint for Declaratory Action and this appeal should be dismissed due to OFDI's failure to file a *quo warranto* proceeding within thirty days of the annexation ordinance's passage.

## III. Standard of Review

With regard to a trial court's findings of fact following a bench trial, Tennessee Rule of Appellate Procedure 13(d) provides:

Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

We review conclusions of law, however, *de novo* and without any presumption of correctness. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996) (citing *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993)).

## IV. Annexation Ordinance

OFDI asserts that the trial court erred in determining that the annexation of the property was reasonable. There is no dispute in this matter that the property in question falls within the Town's urban growth boundary. Regarding a municipality's urban growth boundary, our Supreme Court has explained:

Tennessee Code Annotated sections 6-58-101 to -116 ("Chapter 58") establish procedures by which a county must develop and adopt a countywide growth plan for land use decisions within the county, including annexations by municipalities. *E.g.,* Tenn. Code Ann. § 6-58-107 (2005). A county's growth plan establishes urban growth boundaries for each

4

municipality in the county. Tenn. Code Ann. § 6-58-107. A municipality's urban growth boundary demarcates the area in which the municipality is projected to grow and in which the municipality's annexation of territory is presumptively reasonable. *See* Tenn. Code Ann. §§ 6-58-106(a)(1), -111(a)(1) (2005); *State ex rel. Tipton v. City of Knoxville,* 205 S.W.3d 456, 460-61 (Tenn. Ct. App. 2006).

*City of Harriman v. Roane Cnty. Election Comm'n*, 354 S.W.3d 685, 686 (Tenn. 2011).

It is well settled that Tennessee Code Annotated § 6-58-111(a) (2015) applies to the annexation of territories within an urban growth boundary. *See Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 707 (Tenn. 2009); *Tipton v. City of Knoxville*, 205 S.W.3d 456, 461 (Tenn. Ct. App. 2006). Tennessee Code Annotated § 6-58-111 states in pertinent part:

(a) A municipality possesses exclusive authority to annex territory located within its approved urban growth boundaries; therefore, no municipality may annex by ordinance or by referendum any territory located within another municipality's approved urban growth boundaries. Within a municipality's approved urban growth boundaries, a municipality may use any of the methods in chapter 51 of this title to annex territory; provided, that if a quo warranto action is filed to challenge the annexation, the party filing the action has the burden of proving that:

(1) An annexation ordinance is unreasonable for the overall well-being of the communities involved; or

(2) The health, safety, and welfare of the citizens and property owners of the municipality and territory will not be materially retarded in the absence of such annexation.

(b) In any such action, the action shall be tried by the circuit court judge or chancellor without a jury.

OFDI contends that the annexation ordinance was unreasonable and that the only purpose of the Town's annexation of the subject property was to levy taxes, even though the taxes on OFDI's property amounted to only $875.00 per year. Furthermore, OFDI insists that because it had no plans to develop the property, the Town will not provide any municipal services immediately after the annexation because OFDI has no need of such services.

5

The Town correctly asserts that OFDI bears the burden of proving that (1) the annexation ordinance was unreasonable for the overall well-being of the community involved, or (2) the health, safety, and welfare of the citizens and property owners of the municipality and territory would not be materially retarded in the absence of such annexation, pursuant to the statute. Furthermore, the Town argues that the trial court was correct in determining that OFDI did not carry its burden of proof. We agree.

Regarding the challenge to an ordinance annexing property within the municipality's urban growth boundary, this Court has previously elucidated:

> "While other factors may be considered, the primary test of the reasonableness of an annexation ordinance must be the planned and orderly growth and development of the city, taking into consideration the characteristics of the existing city and those of the area proposed for annexation." *State ex rel. Collier v. City of Pigeon Forge,* 599 S.W.2d 545, 548 (Tenn. 1980); *accord Cox v. City of Jackson,* No. 02A01-9701-CH-00002, 1997 WL 777078, at *4 (Tenn. Ct. App. Dec. 18, 1997), *perm. app. denied* June 22, 1998. Factors to be considered in assessing the reasonableness of an annexation include:
>
> > a.    the necessity for, or use of, municipal services;
> >
> > b.    the present ability and intent of the municipality to render municipal services when and as needed; [and]
> >
> > c.    whether the annexation is for the sole purpose of increasing municipal revenue without the ability and intent to benefit the annexed area by rendering municipal services.
>
> *Town of Oakland v. Town of Somerville,* No. W2002-02301-COA-R3-CV, 2003 WL 22309498, at *5 (Tenn. Ct. App. Oct. 7, 2003), *perm. app. denied* Mar. 22, 2004 (citing *City of Kingsport v. State ex rel. Crown Enters., Inc.,* 562 S.W.2d 808, 812 (Tenn. 1978); *Saylors v. City of Jackson,* 575 S.W.2d 264, 266 (Tenn. 1978)).

*Sw. Tenn. Elec. Membership Corp. v. City of Jackson*, 359 S.W.3d 590, 605 (Tenn. Ct. App. 2010).

Applying the above-listed factors to the case at bar, we first consider OFDI's argument that its property, consisting of unimproved land, did not need and would not

benefit from the provision of any services by the Town. Although Mr. Billingsley maintained that fire protection for OFDI's property was not necessary because he believed it was beneficial to have "a good fire every now and then to clean it out," he also acknowledged that an uncontrolled forest fire on OFDI's property could potentially damage adjoining landowners' properties. Furthermore, Mr. Billingsley's disinterest in fire protection services appears inconsistent with his stated plans to harvest timber from the property. Mr. Billingsley also maintained that OFDI did not intend to develop the subject property such that the provision of garbage collection, inspection services, and the like would be of no utility to OFDI. He conceded, however, that if OFDI sold the property or it was developed in the future, having access to the Town's services would be valuable and beneficial.

With regard to the second factor, it was undisputed that the Town approved a plan of services in conjunction with the annexation of the subject property. In addition to fire and police protection services, the proof demonstrated that the Town would install a main sewer line to the border of OFDI's property at an estimated cost of $5,000. Any future residents would then pay a reduced rate for sewer service. The Town also committed to provide garbage collection services, maintain any future streets, provide street lighting, provide inspection services, and develop a zoning plan. As stated previously, OFDI did not question the Town's intent to provide the listed services. OFDI merely questioned whether such services would be of any benefit to the property as it presently exists.

In a prior case where landowners opposed annexation and claimed to neither want nor need municipal services, our Supreme Court explained:

> The failure of a city to extend its corporate boundaries to embrace contiguous areas of growth and development is an abdication of responsibility. The time to annex is in the incipient stage of growth, lest the basic purpose of annexation be frustrated and the public interest suffer by the annexation of substandard areas.
>
> * * *
>
> [W]e have not overlooked the insistence of the appellants that they neither wanted nor needed the city services and that they had service equal to or exceeding those provided by the city. This is an old and familiar tune. Its factual accuracy is debatable.
>
> We do not consider the need for city services to be of controlling significance. True, this is a factor to be taken into consideration along with others, but, as this Court held in *City of Kingsport* [*v. State ex rel. Crown*

*Enters., Inc.*, 562 S.W.2d 808, 814 (Tenn. 1978)], "(t)he whole process of annexation would be frustrated if the city could only annex those properties then in need of city services." 562 S.W.2d at 814. Moreover, this record is replete with testimony showing a need for services provided by the city. A part of the basis for appellants' lack of need lies in the fact that already the city is directly providing some services and the annexed area is the indirect beneficiary of other services stemming from its proximity to the city.

The people and property owners of an area proposed for annexation have neither the moral nor legal right to stand aloof from the incorporated community of which they are a de facto part, enjoying most of the benefits, but disclaiming their duty to participate in providing these essential services. Nor do they have the right to block the orderly growth and development of the corporate community. The statutory test is the "overall well-being" of both the annexing city and the annexed community. This record shows a benefit to both; a detriment to neither.

While other factors may be considered, the primary test of the reasonableness of an annexation ordinance must be the planned and orderly growth and development of the city, taking into consideration the characteristics of the existing city and those of the area proposed for annexation.

*State ex rel. Collier v. City of Pigeon Forge*, 599 S.W.2d 545, 547-48 (Tenn. 1980). Based on this precedent, we conclude that OFDI's purported lack of desire to avail itself of available services provided by the Town is not dispositive when the Town has committed to providing valuable services as needed.

As to factor three, whether the annexation is for the sole purpose of increasing municipal revenue without the ability and intent to benefit the annexed area by rendering municipal services, we conclude that the evidence preponderates in favor of a determination that it is not. The Town has committed to providing numerous services for a large parcel of property when the revenue amounts to a mere $875 per year. Regarding its purpose for the annexation, the Town represented that annexation of the property in question was necessary to protect the water reservoir and "[get] ahead of development" that might impact the water supply. The evidence at trial demonstrated that such protection of the water supply was necessary for the health and welfare of citizens of the Town and other communities served by the water reservoir. We determine this to be a valid and reasonable basis for the Town's annexation of the subject property. We therefore conclude that OFDI did not meet its burden of proving that the annexation ordinance was unreasonable for the overall well-being of the community involved.

8

We also determine that OFDI failed to prove that the health, safety, and welfare of the citizens and property owners of the municipality and territory would not be materially retarded in the absence of this annexation.[1]  As this Court has explained:

> "[P]roving lack of material retardation necessarily requires proof that annexation will not materially benefit the municipality and territory." *State ex rel. Tipton v. City of Knoxville,* 205 S.W.3d 456, 462 (Tenn. Ct. App. 2006).  Therefore, a party challenging an annexation under subsection (2) must "prove that annexation would not materially benefit the health, safety, and welfare of the citizens and property owners of the City and the affected territory." *Id.*

*Sw. Tenn. Elec. Membership Corp.*, 359 S.W.3d at 606.

As previously explained, the evidence in this matter established that the annexation's purpose was to protect the Town's water supply, which would clearly benefit the health, safety, and welfare of the Town's citizens.  Furthermore, Mr. Billingsley admitted that any future development of OFDI's property would be benefitted by the services provided by the Town following annexation.  Therefore, the annexation was mutually advantageous to the Town and to OFDI, materially benefitting the health, safety, and welfare of the citizens and property owners of the Town and the affected territory.  We conclude that the trial court did not err in determining that OFDI failed to meet its burden of proving the annexation ordinance to be unreasonable.

## V.  Procedural Challenges

The Town contends that OFDI's Complaint for Declaratory Action and this appeal should be dismissed due to OFDI's failure to file a *quo warranto* proceeding within thirty days of the annexation ordinance's passage.  Thus, the Town's argument appears to be two-fold:  (1) that the action filed by OFDI was not a proper *quo warranto* action and (2) that it was untimely because it was filed before the ordinance was passed.

With regard to the type of action filed by OFDI, our Supreme Court has made clear that "[w]ithin the four corners of [the *quo warranto*] statute lies the entire jurisdiction and authority of the Courts to review the actions of municipalities in enacting annexation ordinances." *See Highwoods Props.,* 297 S.W.3d at 708 (citing *City of Oak*

---

[1] OFDI framed its issue on appeal as one involving the reasonableness of the annexation ordinance.  A review of OFDI's arguments reveals that OFDI is referring to overall reasonableness as discussed in *Sw. Tenn. Elec. Membership Corp.*, 359 S.W.3d at 606, as opposed to mere reference to the first prong of Tennessee Code Annotated § 6-58-111(a).

*Ridge v. Roane Cnty.*, 563 S.W.2d 895, 897 (Tenn. 1978)). In the instant action, although OFDI's complaint was styled as a "Complaint for Declaratory Action," the complaint referenced Tennessee Code Annotated § 6-51-103 (2015), which is the statute addressing *quo warranto* actions to contest annexation ordinances.[2] Furthermore, within its complaint, OFDI specifically averred that it was contesting "the validity of the ordinance" and that the proposed ordinance "was not reasonable for the overall well being of the community or municipality." We determine that OFDI properly asserted a *quo warranto* challenge to the ordinance at issue. *See, e.g., State ex rel. Garrett v. City of Norris*, No. E2013-02355-COA-R3-CV, 2014 WL 4260848 at *5 (Tenn. Ct. App. Aug. 28, 2014) ("While [the plaintiff's] complaint was not a model of clarity, it articulated sufficient facts and cited relevant law such that [the defendant] was apprised of a challenge to the annexation of the Territory."). *See also Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 371 (Tenn. 2011) (holding that courts should give effect to the substance of a pleading rather than its form or title).

Regarding the timeliness of the action, the Town argues that the complaint, which was filed five days prior to the final passage of the ordinance at issue, was untimely because it was premature. The Town insists that because Tennessee Code Annotated § 6-51-103 provides that a *quo warranto* action must be filed prior to the ordinance's operative date, and Tennessee Code Annotated § 6-51-102 (2015) provides that the ordinance becomes operative thirty days after its final passage, this thirty-day window following final passage of the ordinance is the only time period within which a timely *quo warranto* action may be filed. The Town cites no authority, however, for this position. The cases upon which the Town seeks to rely only involve *quo warranto* actions that were filed after expiration of the thirty-day period. *See Highwoods Props.*, 297 S.W.3d at 707; *Allen v. City of Memphis*, 397 S.W.3d 572, 582 (Tenn. Ct. App. 2012). We find no basis to hold that a *quo warranto* action filed days before the final passage of the ordinance is untimely as premature. This action was filed prior to the ordinance's operative date, in accordance with Tennessee Code Annotated § 6-51-103, and is therefore timely.

---

[2] Tennessee Code Annotated § 6-51-103 (2015) provides in pertinent part:

> Any aggrieved owner of property that borders or lies within territory that is the subject of an annexation ordinance prior to the operative date thereof, may file a suit in the nature of a quo warranto proceeding in accordance with this part, § 6-51-301 and title 29, chapter 35 to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law.

## VI. Conclusion

For the foregoing reasons, we determine that the trial court's judgment is correct and should be affirmed. Costs on appeal are assessed to the appellant, Oneida Farms Development, Inc. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____

THOMAS R. FRIERSON, II, JUDGE