Tara E. **HERBERT** and Karma Herbert, Minors, By Their Parents, Eddie L. Herbert and Robin M. **HERBERT**, Individually and Eddie E. Herbert, Individually, Plaintiffs/Appellants,

v.

Gregory B. **BRAZEALE**, Harold D. Brazeale and Donald Devazier, d/b/a Donald Devazier Trucking Company, Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 14, 1995.

Application for Permission to Appeal Denied by Supreme Court May 30, 1995.

934

Tim Wade Hellen, Memphis, Thomas A. Deal, Speedway, IN, for appellants.

Kenneth R. Shuttleworth, Memphis, Archie Sanders, III, Memphis, for appellees.

TOMLIN, Presiding Judge (Western Section).

Robin Herbert ("Herbert"), on behalf of herself and her two minor daughters, Tara and Karma Herbert ("plaintiffs" [1]), filed suit in the Circuit Court of Shelby County against Gregory Brazeale, Harold Brazeale, Donald Devazier, d/b/a Donald Devazier Trucking Company ("defendants"), for personal injuries and property damages sustained by them in an automobile-truck collision. The jury returned a verdict in favor of defendants, finding them not guilty of negligence. Plaintiffs' motion for a new trial was overruled. On appeal, plaintiffs have set forth the following issues for review: whether the trial court erred in: 1) failing to properly perform its function as a thirteenth juror in approving the jury verdict; 2) allowing the opinion testimony of defendants' accident reconstruction expert; 3) refusing to allow plaintiffs' counsel to question defendant Gregory Brazeale about certain aspects of his driving record; 4) granting defendants' motion for directed verdict on the issue of loss of earning capacity of minor plaintiff Tara Herbert and striking certain testimony relevant thereto; 5) explaining plaintiffs' factual contentions to the jury; and 6) failing to properly instruct the jury as to the law of comparative negligence and parental immuni-

1. The singular may occasionally be used, in which event it will refer to the adult, Robin Herbert.

ty. With the exception of Issue 4, which we pretermit, we resolve these issues in favor of defendants and affirm.

The facts surrounding this accident, while relatively simple, were hotly disputed. Plaintiff was driving her vehicle, accompanied by her two minor daughters. Upon leaving a gas station at the southeast corner of the intersection of Danny Thomas Boulevard and Poplar Avenue in Memphis, plaintiff pulled into Danny Thomas and headed north in the right hand turning lane, bringing her car to a stop at the light. The traffic control signal for northbound traffic on Danny Thomas was red. Defendant Gregory Brazeale was approaching this same intersection in his tractor trailer truck, proceeding east on Poplar, in the right-hand through traffic lane. When defendant's tractor-trailer proceeded through the intersection into the northbound lanes of Danny Thomas, plaintiff proceeded from a stopped position into the intersection and struck the right rear wheels of the tractor.

Defendant testified that he entered the intersection on a yellow light and plaintiff pulled her car into the intersection into his truck. A witness in a vehicle in the northbound lane stopped alongside plaintiff's car testified that the traffic light for traffic proceeding north on Danny Thomas turned green before defendant's truck passed through the intersection. Another witness, who was in a vehicle on the north side of the intersection on Danny Thomas headed south, also testified that defendant's truck passed through the intersection after the light had changed to green for traffic proceeding north and south on Danny Thomas.

An accident reconstruction expert called by defendants testified that defendant Brazeale proceeded through the intersection on a yellow light. Using a special verdict form, the jury returned a verdict that defendants were not negligent.

## I. *The Trial Court as the Thirteenth Juror*

Plaintiffs first assert that the trial court failed to properly perform its function as thirteenth juror in approving the jury verdict. Plaintiffs filed a motion for a new trial, which sought a new trial on the ground that the jury verdict was contrary to the weight of the evidence. The motion was overruled. Plaintiffs contend that based upon the various statements made by the trial judge at the hearing on the motion for a new trial, it was clear that he failed to weigh the evidence in accordance with his role as thirteenth juror.

In *Miller v. Doe,* 873 S.W.2d 346 (Tenn. App.1993), this court recently explained the trial court's duty as thirteenth juror:

The obligation of a trial judge to act as a thirteenth juror in a civil trial in this state is well established. *Cumberland Telephone & Telegraph Co. v, Smithwick,* 112 Tenn. 463, 79 S.W. 803 (1904), reads in part as follows:

The rule in civil cases is that, if the circuit judge is dissatisfied with the verdict of the jury, it is his duty to set it aside and grant a new trial, and that upon its being made to appear to this court, from statements made by the circuit judge in passing upon the motion for a new trial, that he was really not satisfied with the verdict, it becomes the duty of this court, when it has acquired jurisdiction of the cause, to do what the circuit judge should have done; that is, to grant a new trial on the ground of the dissatisfaction of that judicial officer with the verdict. (Citations omitted) . . . .

.  .  .  .  .

The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of

the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence, and, if he is dissatisfied with the verdict of the jury, he should set it aside. . . .

*Id.* 79 S.W. at 804–05.

If called upon to act as a thirteenth juror following the filing of a motion for a new trial, the trial judge simply approves a verdict without any comment, it is presumed by an appellate court that he has performed his function adequately.

In the event that the trial court does state his reasons, an appellate court is to examine them only for the purpose of determining whether the trial court properly reviewed the evidence, and was satisfied or dissatisfied with the verdict. However, if in discharging his duty as thirteenth juror, the trial judge makes comments which indicate that he has misconceived his duty or clearly has not followed it, this court must reverse and remand the case for a new trial.

*Id.* at 347 (citations omitted).

■ Both plaintiffs and defendants have relied upon excerpts from the trial court's statements at the hearing on plaintiffs' motion for a new trial in support of their respective positions as to whether the trial judge did or did not carry out in proper fashion his function as thirteenth juror. To fully understand the impact of what the trial court said, we quote from the record the court's remarks in their entirety:

*The main thrust of this motion for a new trial is that preponderance of the evidence dictates against the verdict of the jury. The Court has weighed the evidence as suggested by plaintiff's counsel and it seems to the Court that this is an intersection that's six lanes wide from the west to the east edges of the intersection. It's a very busy intersection. Right in the heart of the city. And probably the most traveled street in the City of Memphis—maybe in the State of Tennessee. Each of those lanes, I believe, was occupied by a vehicle, including that of the plaintiff who was northbound. There are three northbound lanes and three southbound lanes.*

*There was testimony that the light for north and southbound traffic was green at the time of this accident. There was also testimony—and it's an undisputed fact—that the defendant was traveling eastwardly on Poplar Avenue at Danny Thomas, driving an 18–wheel tractor-trailer truck.*

*I think there is evidence from which the jury could believe that he entered that intersection on a yellow light. It's undisputed by the proof offered by the plaintiff that although all three of the northbound lanes and all three of the southbound lanes of this intersection were occupied by vehicles, only one, the vehicle operated by the plaintiff, pulled into the intersection. The others remained where they were. The southbound vehicles, none of those vehicles pulled out. None of the northbound vehicles pulled out except the vehicle of the plaintiff.*

*There is evidence in the record by the plaintiff's own hand that she did not see to her left. Also there is evidence from the plaintiff that she looked but couldn't see—but did not see the truck that was there.*

*It's entirely possible, and apparently what the jury did was to believe that this truck entered the intersection on a yellow light, was so near the intersection that under the facts and circumstances then and there existing the truck moved into the intersection.*

*Now the preponderance of the evidence is not alone determined by the number of witnesses who testify to a fact or to the aggregate state of facts. What the jury believes is the weight and faith and credibility and value to be given to the witnesses to determine the aggregate state of all the facts in the case, and to determine*

*which ones of the witnesses were in a position to know and did know the facts about the case.*

*This Court can't say that the evidence preponderates against this verdict and the Court will approve the verdict of the jury in the case. You may draw an order.*

In our opinion, the comments made by the trial judge do not violate the principles set forth in *Miller, supra.* The trial judge properly carried out the function assigned to him in considering and passing on the motion for a new trial. This issue is without merit.

## II. *Testimony of Defendants' Accident Reconstruction Expert*

■ Defendants offered as an expert witness Mr. David Brown of Duluth, Georgia. Mr. Brown presented as part of his credentials a degree in mechanical engineering, along with a career of testifying as an accident reconstruction expert in various types of litigation over the past fifteen years. The trial court permitted plaintiffs' counsel to conduct a voir dire examination of Brown outside the presence of the jury prior to Brown's testifying. After a lengthy examination, plaintiffs' counsel made no objection to Brown being offered as a witness. Rather, counsel requested the court to admonish Brown regarding certain aspects of his testimony in the event that he attempted to testify in these areas. The trial court declined to make such an admonition, reserving any rights to do so until the actual presentation of the proof.

After covering Brown's background, training and experience, and establishing that Brown had been requested to investigate the accident in question, defendants' counsel asked Brown to explain what type of investigation he had made of the accident. Brown responded by indicating that the travel of vehicles, speed, and the traffic control signal lights were the principal elements involved. Brown stated that he reviewed the depositions of both drivers, as well as the drivers of two other vehicles who were witnesses to the accident, and that he also reviewed a copy of the police report. Counsel for plaintiffs objected to any testimony by Brown concerning the depositions of defendant driver and witnesses David Lower and Judy Birch on the grounds that they had not been entered into evidence. This objection was overruled.

Brown testified that he went to the scene and spent about two hours taking measurements and photographs and observing the timing of the lights—that is, the traffic light sequences and how the traffic passed through the intersection. He also stated that he compared the facts alleged by the witnesses with the physical characteristics of the intersection itself, in addition to looking at the photographs of the damage to vehicles. Counsel for defendants asked Brown if he had formed an opinion as to what actually transpired. Counsel for plaintiffs thereupon objected, contending that Brown's ultimate opinion was "based upon his judgment of the credibility of witnesses." The objection was overruled, whereupon Brown stated that in his opinion, the truck (defendant's vehicle) was approaching or crossing the west margin of the intersection near the location of the stop bar for traffic heading east when the traffic light changed from green to yellow, but the truck was too close to the intersection to stop and proceeded through the intersection, whereupon plaintiff's vehicle pulled out of the right hand curb lane or the lane next to it and struck the right hand side of the tractor behind the cab area.

Plaintiffs object that Brown's testimony was nothing more than an evaluation or assessment of the credibility of plaintiff's witnesses, and that his conclusions were based upon deposition testimony that had not been admitted into evidence. We find no merit in either objection. During both the voir dire and direct examination, plaintiff's counsel repeatedly sought to get Brown to agree that his testimony was nothing more than an assessment or an evaluation of certain witnesses' credibility. Brown repeatedly denied this, and furthermore countered that he was basing his statements upon his training, experience, an evaluation of the physical facts, and the testimony of certain witnesses.

As for relying upon deposition testimony in expressing his opinions, such is permitted by Rule 703 of the Rules of Evidence, which reads as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

As can be seen, Rule 703 asserts that statements upon which an expert relies need not be admissible. This contention is without merit.

Furthermore, Tennessee Rule of Evidence 702 provides:

If scientific, technical or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

"It is obvious that, however an 'expert' may be defined, he should, in order to give his opinion as an expert, have some special as well as practical acquaintance with the immediate line of inquiry." *Benson v. Fowler*, 43 Tenn.App. 147, 306 S.W.2d 49, 63 (1957) (quoting *Powers v. McKenzie*, 90 Tenn. 167, 16 S.W. 559, 562 (1891)). During the voir dire examination, Brown stated unequivocally that he had formulated his opinions based upon mathematical calculations related to witness testimony regarding the sequence of lights at the intersection, braking times by the vehicles, and distances travelled. Under all the attendant circumstances, whether the trial court should have permitted Brown to testify as an expert on the circumstances leading up to the accident lay within its discretion. *See Otis v. Cambridge Mutual Fire Insur. Co.*, 850 S.W.2d 439, 443 (Tenn.

1992). We find no abuse of that discretion by the trial court.

### III. *The Post–Accident Driving Record of Defendant Brazeale*

■ Months before trial, defendants filed a motion in limine, seeking to prevent reference by plaintiffs to any traffic violations or criminal convictions of defendant Gregory Brazeale that occurred after the accident. This motion was taken up before the trial court outside the presence of the jury on the first day of the trial. In arguing for the motion, counsel for Brazeale advised the court that in his deposition given months before trial, Brazeale had indicated that he had not had any traffic violations since the accident. In fact, some eighteen months following the accident he had been arrested for driving while intoxicated.

In arguing for the motion, Brazeale's counsel contended first that it was not relevant to any issue in the case and more importantly, that any probative value the admission of this arrest might have would be clearly outweighed by the prejudicial effect on the defendant, given the fact that it was remote in time and totally disconnected to this event. In response, counsel for plaintiffs advised the court that all he wished to do was to ask two questions of defendant—whether he gave the answers contained in his deposition and whether the answers were truthful.

The court sustained the defendants' motion in limine, ruling that any such offenses, if they happened, occurred after the lawsuit was filed and were irrelevant. He also held that the prejudice to the defendant overcame any probative value that they might have. On appeal, plaintiffs contend that Rule 608, Tennessee Rules of Evidence, was the basis on which the parties proceeded below, that the application of this Rule prevails over the provisions of Rule 403, Tennessee Rules of Evidence, and that the trial court failed to follow the provisions of Rule 608(b). Rule 608(b) provides in pertinent part as follows:

Specific instances of conduct of a witness for the purpose of attacking or supporting

the witness's credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness.... The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:

(1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;

(2) The conduct must have occurred no more than ten years before commencement of the action or prosecution....

Plaintiffs stated that they were only seeking to interrogate Brazeale about alleged false statements he made in his deposition concerning his driving record.

It is plaintiffs' contention that both conditions set out in Rule 608(b) were met as a result of the hearing and that the trial court erred in not finding Brazeale's "false" statements to be probative of his untruthfulness. Plaintiffs draw the conclusion that if this evidence was probative of untruthfulness it should be admitted irrespective of its prejudicial effect.

In our opinion, plaintiffs misconstrue the practical application of Rule 608(b) as understood by the Advisory Commission and as developed by our Supreme Court. Tennessee Law of Evidence § 608(6) reads in part as follows:

*Balancing probative value against risk of prejudice*—Although nothing in Rule 608 so states, the court may have to make a third finding that involves balancing the probative value against the prejudicial effect of the evidence. Unfortunately, Rule 608 is not clear on what balance is required. One possibility is that the balance

in Rule 403 applies.... This balance excludes the evidence if its probative value is *substantially* outweighed by the danger of unfair prejudice.

A second possibility is suggested in *State v. Morgan,* in which the Tennessee Supreme Court adopted Federal Rule 608(b). In *Morgan,* the Tennessee Supreme Court held:

We further hold that where a witness is sought to be cross-examined as to specific instances of conduct as contemplated by Rule 608(b), the Court shall conduct a jury-out hearing for the purpose of determining that *the probative value of such evidence outweighs its prejudicial effect.*

. . . . .

It is submitted that the *Morgan* approach is best and was probably intended to be used. Because of the high possibility that the misconduct will be given too much weight by the jury and because of the doubtful probative nature of such evidence, the evidence should be excluded if the prejudicial effect outweighs its probative value.

This position is reinforced by the following language from the Advisory Commission Comments to Rule 608:

Part (b) reflects the Supreme Court's view of impeachment by prior bad acts. *State v. Morgan,* 541 S.W.2d 385 (Tenn. 1976), incorporated F.R.Evid. 608(b) into Tennessee case law. The proposed rule is even more specific than the federal version. It requires a jury-out hearing on probative value and basis for cross-examination, relatively recent misconduct, and notice plus analytical weighing of probative value versus unfair prejudice.

In making this ruling, the trial court, in our opinion, properly exercised its discretion and we find no abuse thereof.

## IV. *Alleged Misstatement of Plaintiffs' Case*

■ By this issue, plaintiffs assert that in explaining the facts of the accident to the

jury, the trial court misstated the actions of plaintiff Herbert just prior to the accident and in so doing, gave the jury the impression that she had acted in a negligent way. In relating the facts of the case to the jury, the court stated that Herbert "looked but she could not see into the intersection to her left because of the fact that there were cars in the lane, in the other northbound lanes to her left, proceeding in the same direction in which she was proceeding."

Plaintiffs contend that Special Request No. 16, submitted by them and denied by the trial court, more correctly stated plaintiffs' contention. It reads as follows: "When the light changed to green, Robin Herbert looked and saw no other vehicle in the intersection or so near to it as to render it likely that a collision would occur and that Robin Herbert then proceeded in a northerly direction with the green light for her."

The following reflects Herbert's testimony on direct examination: "[w]hen I first went to pull out I looked up, when the light turned green, and I didn't see him. As soon as I pulled up he was right there; you know, it just happened so fast." In addition, she read the following to the jury from a handwritten statement she had prepared shortly after the accident: "I stopped at red light. Right lane. Other cars to my left. Light turned green. Started to move up and make right turn. Couldn't see anything. Continued to go. By then it was too late."

The entire statement written by plaintiff Herbert filed in the record as an exhibit, reads in pertinent part as follows:

> I Stopped at Stop Light. Right Lane. Another Car to my Left.
>
> Light turned Green. Started to move up to make Right turn. *(unable to See Traffic Coming on Left)* Couldn't See anything moved up. By then it was to (sic) late. Truck Hit Front Left, then car spun and it hit the back.

(Emphasis added).

This issue is without merit. If anything, the description by the trial court in advising the jury of the plaintiff's actions was not only consistent with her testimony but actually placed her in a slightly better light than her written statement introduced in evidence.

## V. *The Jury Instruction Issue*

■ From a reading of plaintiffs' brief as pertains to this issue, it is difficult for the court to ascertain what specific error was allegedly committed by the trial court in regard to jury instructions and what relief plaintiffs seek from this court.

It appears that the trial court gave plaintiffs' Special Request No. 9, which reads in pertinent part as follows:

> However, the negligence, if any, of the parent of a minor child, does not prevent the recovery of damages by the minor child for injuries to herself. Tara Herbert's right of recovery for her injuries will not be affected by any finding of negligence on the part of Robin Herbert. The contributory negligence of the parent is not imputed to the child.

At the end of the day, after the jury had been permitted to leave, counsel for defendant called the court's attention to what he considered to be an error in this special request.

There was a dialogue between the court, plaintiffs' counsel and defendants' counsel. Defendants' counsel pointed out that the last sentence of plaintiffs' Special Request No. 9 was a misstatement of the law in Tennessee under the Supreme Court decision of *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992), in that under the new doctrine of comparative fault, if plaintiff Robin Herbert and defendant were both found to be negligent, the amount of Herbert's daughter's recovery must be reduced by the percentage that Herbert was found to be negligent. After further argument, the court agreed that defendants' counsel stated the law correctly, and the following day as part of its instructions, directed the jury to disregard the instructions given the day before. Subsequently, the court declined to give plaintiffs' Special

Requests Nos. 17 and 18, stating to counsel that he considered the charge to be appropriate under the *McIntyre* doctrine.

As this court reads *McIntyre*, it is clear that under the comparative fault system a defendant may be held liable only for his or her proportionate share of a judgment, and that the jury must assess the percentage of negligence of all parties potentially responsible for the injuries or damages involved. After considering the court's charge, we are of the opinion that the jury was given a correct explanation of comparative negligence as prescribed by *McIntyre*. This issue is without merit.

Lastly, in light of our disposition of the issues above, plaintiffs' fourth issue, which relates to the question of damages, is pretermitted. For the above stated reasons, the judgment of the trial court is affirmed in all respects. Costs in this cause on appeal are taxed to plaintiffs, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.