IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 2, 1999 Session

# JOHN DOE[1], ET AL. v. MAMA TAORI'S PREMIUM PIZZA, LLC, ET AL.

**Appeal from the Circuit Court for Sumner County**
**No. 18268-C     Thomas Goodall, Judge**

---

**No. M1998-00992-COA-R9-CV - Filed April 5, 2001**

---

This appeal arises out of homosexual conduct in the workplace between an adult employee and a sixteen-year-old, part-time employee. After the adult employee was arrested and charged with statutory rape and contributing to the delinquency of a minor, the minor employee and his parents filed suit in the Circuit Court for Sumner County seeking damages from the adult employee and the owner of the restaurant where the minor employee and the supervisor had worked. The restaurant denied liability and among its affirmative defenses asserted the defense of consent with regard to the minor's claims and the defense of comparative fault with regard to the claims of the minor's parents. The trial court denied the minor's and his parents' motions to strike these defenses but granted the minor and his parents permission to apply for an interlocutory appeal. We granted the interlocutory appeal and now hold that the trial court correctly denied the motions to strike the restaurant's defenses.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Brian K. Frazier and Emily M. Smachetti, Nashville, Tennessee, for the appellants, John Doe, and his parents, Robert and Jane Doe.

William B. Jakes, III, James F. Sanders, and A. Scott Ross, Nashville, Tennessee, for the appellee, Mama Taori's Premium Pizza, LLC.

---

[1]Because of the subject matter of this case, we have given the minor plaintiff and his parents pseudonymous designations.

# OPINION

When the events giving rise to this dispute occurred, John Doe was a high school student living with his parents in Sumner County.[2] In 1997, when he was sixteen years old, Mr. Doe began working after school as a part-time "crew member" at Mama Taori's, a pizza restaurant in Hendersonville. Later, in December 1997, Mama Taori's hired 32-year-old Christopher Abson[3] to work at its Hendersonville restaurant as a "crew member." Messrs. Doe and Abson were assigned to work on the same shift at the restaurant.

In early January 1998, Mr. Doe told his mother that Mr. Abson had made sexually suggestive comments and advances towards him. Ms. Doe passed this information along to her daughter who worked as a secretary for one of Mama Taori's executives. Ms. Doe's daughter informed Mama Taori's personnel manager that Mr. Abson was acting suspiciously toward her brother but, according to Mama Taori's, she did not report any specific acts of sexual misconduct. The management of Mama Taori's did not pursue the matter because of the information's lack of specificity and because there had been no other complaints about the quality of Mr. Abson's work or his conduct with other co-workers.

In mid-January 1998, Mama Taori's informed Mr. Abson that he was going to be transferred to its restaurant in Goodlettsville and promoted to the position of shift supervisor. After the information regarding Mr. Abson's promotion and transfer became known, Mr. Doe requested a transfer to the Goodlettsville restaurant. When the management of Mama Taori's denied his request, Mr. Doe threatened to quit and then apply for a job at the Goodlettsville restaurant. Mama Taori's management informed Mr. Doe that if he quit his job at the Hendersonville restaurant, he would not be hired at the Goodlettsville restaurant.

On or about Saturday, January 17, 1998, Ms. Doe talked by telephone with Mama Taori's personnel manager about information she had received regarding Mr. Abson's conduct at an after-hours party at the Motel 6 in Hendersonville. She stated that she had heard rumors about Mr. Abson and requested that Mama Taori's check his criminal record and that her son not be transferred to

---

[2] In light of the procedural posture of this case, we have gleaned the facts used in this opinion from the parties' pleadings. These allegations are not evidence. Thus, except where there is no dispute, all parties will be required at trial to present competent evidence to prove the factual averments in their respective pleadings.

[3] When Mr. Abson applied for a job with Mama Taori's, he completed an employment application stating that his name was Christopher Abson and that he had never been convicted of a crime. Mama Taori's offered Mr. Abson a job after he received a favorable reference from a former employer. It was not until late January 1998 that Mama Taori's discovered that Mr. Abson was actually Jonathan Vann Staten and that he had been released from prison in August 1997 where he had been serving sentences stemming from two rape convictions. According to Mr. Doe and his parents, one of these convictions was for the rape of a child.

work at the Goodlettsville restaurant. Ms. Doe's daughter telephoned the Hendersonville Police Department on January 19, 1998, and was informed that Mr. Abson had no criminal record.

Mr. Abson began working at the Goodlettsville restaurant on January 22, 1998. According to Ms. Doe, Mr. Abson called her on January 25, 1998, to deny that he had ever "socialized with [Mr. Doe] . . . or the other boys after work or at any time." On January 26, 1998, Ms. Doe contacted the Hendersonville Police Department to request an investigation into Mr. Abson's background. Later that same day, Mr. Doe told his mother that Mr. Abson had engaged in sexual acts with him in the restaurant's bathroom after giving him a "marijuana cigarette [that] contained a 'knock out drug' that caused [him] . . . to become incapacitated." The police also telephoned Ms. Doe to confirm that they had discovered that Mr. Abson had been previously convicted of rape under the name of Jonathan Vann Staten. On January 28, 1998, Mr. Doe, acting in concert with the police, engaged Mr. Abson in a recorded telephone conversation during which Mr. Abson confirmed that he had engaged in sexual acts with Mr. Doe. Following the telephone call, the authorities arrested Mr. Abson, and Mama Taori's fired him.

In April 1998, the Sumner County grand jury indicted Mr. Abson on three counts of statutory rape and three counts of contributing to the delinquency of a minor. Two of the statutory rape counts involved oral sex with Mr. Doe, and two of the contributing to the delinquency of a minor counts involved furnishing alcoholic beverages and marijuana to Mr. Doe. On May 19, 1998, Mr. Doe and his parents filed suit in the Circuit Court for Sumner County seeking $3,000,000 in compensatory and $5,000,000 in punitive damages from Mr. Abson and Mama Taori's. The complaint contained three claims of violations of the Tennessee Human Rights Act,[4] five intentional tort claims,[5] and five negligence claims.[6] On August 3, 1998, Mr. Abson pleaded guilty to three counts of statutory rape and one count of contributing to the delinquency of a minor. Two of the rape convictions and the contributing to the delinquency of a minor conviction involved his conduct with Mr. Doe.[7]

Mama Taori's filed an answer denying liability and asserting that Mr. Doe had contributed to his injuries by consenting to the sexual acts with Mr. Abson. The restaurant also asserted that Mr. Doe's parents were comparatively at fault. In response, Mr. Doe and his parents filed Tenn. R. Civ. P. 12.06 motions to strike Mama Taori's defenses based on Mr. Doe's consent and their contributory fault. The trial court denied the motions to strike but granted Mr. Doe and his parents permission

---

[4] These claims include claims for quid pro quo sexual harassment, hostile work environment, and malicious sexual harassment.

[5] These claims include battery, assault, false imprisonment, outrageous conduct, and invasion of privacy.

[6] These claims include negligent hiring, negligent entrustment, negligent retention, negligent infliction of emotional distress on Mr. Doe, and negligent infliction of emotional distress on Mr. Doe's parents.

[7] Mr. Doe and his parents filed a Tenn. R. App. P. 14 motion requesting this court to consider Mr. Abson's August 3, 1998 guilty pleas as post-judgment facts. We hereby grant the motion.

to pursue an interlocutory appeal pursuant to Tenn. R. App. P. 9. We granted the application for permission to appeal.

# I.
## APPELLATE REVIEW OF RULINGS ON TENN. R. CIV. P. 12.06 MOTIONS

The purposes of a motion to strike under Tenn. R. Civ. P. 12.06 are (1) to eliminate redundant, immaterial, impertinent, or scandalous matter from pleadings, (2) to object to insufficient defenses, and (3) to enforce Tenn. R. Civ. P. 8.05's requirement that pleadings be simple, concise and direct. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (2d ed. 1990) ("*Federal Practice and Procedure*").[8] When used for their intended purpose, these motions help the parties and the courts avoid the time and money wasted litigating spurious issues by dispensing with these issues prior to trial. *Sidney-Vinstein v. A.H. Robbins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *United States v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993); *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 22 (E.D. Penn. 1992). Despite their salutary purpose, motions to strike are not favored because the remedy they offer is drastic and because they are frequently used simply as a dilatory tactic. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs., Pty., Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981); *Morell v. United States*, 185 F.R.D. 116, 117 (D.P.R. 1999); 5A *Federal Practice and Procedure* § 1381, at 672; 2A James W. Moore, *Moore's Federal Practice* ¶ 12.21[2] (2d ed. 1995) ("*Moore's Federal Practice*").

A Tenn. R. Civ. P. 12.06 motion may be used to test the "legal sufficiency" of an affirmative defense. *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977). To succeed with a Tenn. R. Civ. P. 12.06 motion, the moving party must show both that the challenged claim or defense does not involve a question of fact or law on which the non-moving party can succeed and that failure to strike the challenged claim or defense will be prejudicial to the moving party. *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999); *Abrams v. Lightolier, Inc.*, 702 F. Supp. 509, 511 (D.N.J. 1988); 5A *Federal Practice and Procedure* § 1380. Prejudice for the purpose of a Tenn. R. Civ. P. 12.06 motion arises when the challenged claim or defense has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the moving party. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F. Supp. 2d 1006, 1009-10 (N.D. Ill. 1998).

Whether a particular defense is insufficient for the purposes of a Tenn. R. Civ. P. 12.06 motion depends on the nature of the claim. 5A *Federal Practice and Procedure* § 1381. An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance or if it bears no possible relationship to the matters in controversy. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *FSLIC v. Burdette*,

---

[8] Tennessee has few precedents regarding the operation of Tenn. R. Civ. P. 12.06. The rule is, however, identical to Fed. R. Civ. P. 12(f). Accordingly, decisions of the federal courts construing their analogous rule can provide us helpful guidance in interpreting our own rule. *Byrd v. Hall*, 847 S.W.2d 208, 211 n.2 (Tenn. 1993); *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 49 (Tenn. 1986); *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 n.7 (Tenn. Ct. App. 1995).

696 F. Supp. 1183, 1186 (E.D. Tenn. 1988). A motion to strike a defense should not be granted if there is any doubt that the challenged claim or defense might raise an issue of fact or law, *Nwakpuda v. Falley's, Inc.*, 14 F. Supp. 2d 1213, 1215 (D. Kan. 1998); *Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, 810 F. Supp. 486, 499-500 (S.D.N.Y. 1992); 2A *Moore's Federal Practice* ¶ 12:21[2], or if the insufficiency of the defense is not readily apparent. 5A *Federal Practice and Procedure* § 1381, at 678.

Trial courts have considerable discretion with regard to granting Tenn. R. Civ. P. 12.06 motions. *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000); *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988); *Krisa v. Equitable Life Assurance Soc'y*, 109 F. Supp. 2d 316, 319 (M.D. Penn. 2000). Accordingly, appellate courts review decisions regarding Tenn. R. Civ. P. 12.06 motions using the deferential "abuse of discretion" standard of review.

The "abuse of discretion" standard implicitly recognizes the existence of a range of permissible alternatives. It is intended to be a review-constraining concept implying less intense appellate review and, therefore, less likelihood of reversal. *State ex rel. Jones v. Looper*, ___ S.W.3d ___, ___ (Tenn. Ct. App. 2000);[9] *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Discretionary decisions must take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, an appellate court reviews a discretionary decision to determine (1) whether it has a sufficient evidentiary foundation and (2) whether the court correctly identified and properly applied the appropriate legal principles. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). We will set aside a discretionary decision only when it is based on an erroneous application of a controlling legal principle or on a clearly erroneous assessment of the evidence. *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

## II.
### MAMA TAORI'S DEFENSE BASED ON MR. DOE'S CONSENT

Mr. Doe and his parents assert that the trial court erred by denying their motion to strike Mama Taori's defense premised on its claim that Mr. Doe consented to Mr. Abson's sexual contact. They assert that this defense should not be available to Mama Taori's as a matter of law because consent should not be a defense to a civil action for damages when it cannot be a defense to a criminal charge of statutory rape under Tenn. Code Ann. § 39-13-506 (1997). We disagree because the issue of consent is material and relevant to the issue of damages in civil proceedings where monetary damages are sought.

### A.

---

[9] *State ex rel. Jones v. Looper*, No. M1999-00662-COA-R3-CV, 2000 WL 354404, at *3 (Tenn. Ct. App. Apr. 7, 2000), *perm. app. denied* (Tenn. Oct. 30, 2000).

Our analysis begins with the classification of Mr. Abson's conduct upon which Mr. Doe's and his parents' damage claims are based. For the purpose of this civil proceeding, Mr. Abson's sexual contact with Mr. Doe constitutes the intentional tort of battery. A battery is an intentional act that causes an unpermitted, harmful or offensive bodily contact. *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989); Restatement (Second) of Torts § 18(1) (1965); 7 Stuart M. Speiser, et al., *The American Law of Torts* § 26:12 (1990) ("*Speiser*"). Offensive contact is contact that infringes on a reasonable sense of personal dignity ordinarily respected in a civilized society. Restatement (Second) of Torts § 19 (1965); 1 Fowler W. Harper, et al., *The Law of Torts* § 3.2 (3d ed. 1996) ("*Harper*"); 1 Dan B. Dobbs, *The Law of Torts* § 28, at 52-53 (2001) ("*Dobbs*").

One of the fundamental principles of the common law is *volenti non fit injuria* – one who consents to what is done cannot complain of it, *Perez v. McConkey*, 872 S.W.2d 897, 900 (Tenn. 1994); William H. Inman, *Gibson's Suits in Chancery* § 40, at 44 (7th ed. 1988). Those who, with full knowledge, assent to an invasion of their personal interests may not complain. 1 *Harper* § 3.10. Thus, there can be no battery if the contact or touching was consented to. *Kline v. Jordan*, 685 S.W.2d 295, 296 (Tenn. Ct. App. 1984); Restatement (Second) of Torts, § 892A (1979); W. Page Keeton, *Prosser and Keeton on the Law of Torts*, § 18, at 112 (5th Ed. 1984) ("*Prosser and Keeton*"). However, consent will not negate an intentional tort in every circumstance. Consent will not be effective to avoid liability if (1) the person giving consent lacked the necessary capacity, (2) the consent was coerced, (3) the person giving the consent was mistaken about the nature and quality of the act, or (4) the nature of the act was such that no person could consent to it. *Church v. Perales*, ___ S.W.3d ___, ___ (Tenn. Ct. App. 2000); Restatement (Second) of Torts §§ 892A(2) & 892B; *Prosser and Keeton*, § 18, at 114; 1 *Harper*, at § 3.10.

Incapacity to give consent may arise from age, intoxication, or mental incompetence. *Cardwell v. Bechtol*, 724 S.W.2d 739, 746 (Tenn. 1987) (age); *State v. Johnson*, 661 S.W.2d 854, 859 (Tenn. 1983) (intoxication); *Knight v. Lancaster*, 988 S.W.2d 172, 180 (Tenn. Ct. App. 1998) (mental competency); Restatement (Second) of Torts § 892A; *Prosser and Keeton*, § 18, at 114; 1 *Dobbs*, § 98, at 224; 1 *Speiser*, § 5:7; at 798-99. This case involves incapacity to give consent based on age. Mr. Doe and his parents are asserting that Mr. Doe lacked the capacity to consent to Mr. Abson's sexual contact, as a matter of law, because he was under the age of eighteen.

**B.**

Both the Tennessee Supreme Court and the Tennessee General Assembly have declined to adopt a per se rule that all persons under the age of eighteen lack the capacity to consent. Approximately fifteen years ago, the court held that "mature minors" could effectively consent to medical treatment without their parents' approval. *Cardwell v. Bechtol*, 724 S.W.2d at 745. The court recognized that "minors achieve varying degrees of maturity and responsibility (capacity)" and that "conditions in society have changed to the extent that maturity is now reached at earlier stages of growth than at the time the common law recognized the age of majority at 21 years." *Cardwell v. Bechtol*, 724 S.W.2d at 744-45; *see also Wells v. McNutt*, 136 Tenn. 274, 277, 189 S.W. 365, 365-66 (1916).

Based on its recognition that children mature at different rates, the court declined to adopt a per se rule regarding the competency or capacity of minors.[10]  Instead, the court determined that a minor's competency or capacity depends on his or her age, ability, experience, education, training, degree of maturity or judgment, as well as upon the minor's conduct and demeanor at the time of the incident. *Cardwell v. Bechtol*, 724 S.W.2d at 748.  The court also dictated that the traditional "Rule of Sevens"[11] should be used as the yardstick for determining whether a minor is sufficiently competent to give consent.  *Cardwell v. Bechtol*, 724 S.W.2d at 748.  The rule, as currently formulated by the court, is:

> under the age of seven, no capacity; between seven and fourteen, a rebuttable presumption of no capacity; between fourteen and twenty-one, a rebuttable presumption of capacity.

*Cardwell v. Bechtol*, 724 S.W.2d at 745.  Of course, the Rule of Sevens has been modified by the General Assembly's enactment of the Legal Responsibility Act of 1971[12] which lowered Tennessee's age of majority from twenty-one to eighteen years of age.  Thus, for present purposes, persons over the age of eighteen, being adults, are fully capable of giving consent.  For persons between the ages of fourteen and eighteen, there is a rebuttable presumption that they are capable of giving consent.

Following the *Cardwell v. Bechtol* decision, this court has consistently used the Rule of Sevens to determine whether a minor had the capacity to obtain or consent to medical treatment.  We have determined that minors had the capacity to consent to an abortion, *McGlothin v. Bristol Obstetrics, Gynecology & Family Planning, Inc.*, No. 03A01-9706-CV-00236, 1998 WL 65459, at *5 (Tenn. Ct. App. Feb. 11, 1998) (No Tenn. R. App. P. 11 application filed); *Roddy v. Volunteer Med. Clinic*, 926 S.W.2d 572, 576 (Tenn. Ct. App. 1996), and that a minor had the capacity to obtain birth control information and supplies without her parent's consent.  *Decker v. Carroll Acad.*, No. 02A01-9709-CV-00242, 1999 WL 332705, at *14 (Tenn. Ct. App. May 26, 1999) (No Tenn. R. App. P. 11 application filed).

Similarly, the General Assembly has enacted many statutes reflecting its understanding that children mature at different rates and that they may have the same capacity as adults with regard to certain activities and decisions before they are eighteen years old.  For example, children may engage in certain adult activities before they become eighteen.  They may begin working part-time when

---

[10]*Cardwell v. Bechtol*, 724 S.W.2d at 746 (quoting Dean Prosser's observation in *Prosser and Keeton*, § 18, at 115 that "[a] minor acquires capacity to consent to different kinds of invasions and conduct at different stages in his [or her] development.  Capacity exists when the minor has the ability of an average person to understand and weigh the risks and benefits."

[11]Up to the time of the *Cardwell v. Bechtol* decision, the Rule of Sevens had been used chiefly to determine whether a minor was capable of committing a crime or capable of being negligent. *Wells v. McNutt*, 136 Tenn. at 276, 198 S.W. at 365; *Bailey v. Williams*, 48 Tenn. App. 320, 324, 346 S.W.2d 285, 287 (1960); *West v. Southern Ry. Co.*, 20 Tenn. App. 491, 497-98, 100 S.W.2d 1004, 1008 (1936).

[12]Act of May 4, 1971, ch. 162, 1971 Tenn. Pub. Acts 364.

they are fourteen [Tenn. Code Ann. § 50-5-104 (1999)]; they may obtain a driver's license at sixteen [Tenn. Code Ann. § 55-50-311 (Supp. 2000)]; they may lease a safety deposit box [Tenn. Code Ann. § 45-2-904 (2000)]; and they may marry if they are sixteen years old (or at a younger age if approved by a court) [Tenn. Code Ann. §§ 36-3-105, -107 (1996)]. They may also make decisions regarding their healthcare such as executing a durable power of attorney for healthcare [Tenn. Code Ann. § 34-6-216 (1996)], consent to sterilization if they are married [Tenn. Code Ann. § 68-34-108 (1996)], and consent to medical treatment for drug abuse [Tenn. Code Ann. § 63-6-220 (1997)].

The General Assembly has also decided that minors have the capacity to make decisions regarding sexual conduct and its effects. For example, they may consent to sexual conduct if they are over thirteen years old and if their partner is no more than four years older than they are [Tenn. Code Ann. § 39-13-506]; they may obtain contraceptive advice and supplies [Tenn. Code Ann. § 68-34-107 (1996)]; they may consent to prenatal care [Tenn. Code Ann. § 63-6-223 (1997)]; they may seek judicial consent for an abortion [Tenn. Code Ann. § 37-10-303(b) (1996)]; and they may surrender a child for adoption [Tenn. Code Ann. § 36-1-110(a) (1996)].

The General Assembly has determined that minors are incompetent with regard to relatively few activities. For example, minors cannot possess alcoholic beverages or beer [Tenn. Code Ann. §§ 57-3-412(a)(3)(A), -4-203(b)(2), -5-301(d)(1)(A) (Supp. 2000)] or tobacco products [Tenn. Code Ann. § 39-17-1505(a) (1997)]. They cannot obtain handgun permits [Tenn. Code Ann. § 39-17-1351(b) (Supp. 2000), and they cannot consent to "female genital mutilation" [Tenn. Code Ann. § 39-13-110(a) (1997)].

Based on our review of these statutes and judicial decisions, we have determined that the mature minor rule and the Rule of Sevens adopted by the Tennessee Supreme Court in *Cardwell v. Bechtol* presumptively governs issues in civil cases involving the capacity of minors to consent. Therefore, when an issue regarding the capacity or competency of a minor to consent arises in a civil case, the trier of fact must look to the totality of the circumstances, including the minor's age, ability, experience, education, training, degree of maturity and judgment, and the minor's conduct and demeanor to ascertain whether the minor was able to fully understand and appreciate the risks and probable consequences of the conduct. Following the Rule of Sevens, children under the age of seven lack capacity. Children between the ages of seven and fourteen are presumed to lack capacity, but the presumption can be rebutted. Finally, children between the ages of fifteen and eighteen are presumed to have capacity, but the presumption may also be rebutted.

## C.

Mr. Doe and his parents argue that the mature minor rule and the Rule of Sevens are inapplicable to all of their civil damage claims because Mr. Doe's consent is irrelevant as a matter of law. They assert that Mr. Doe's consent should not be a defense in this proceeding because it was not a defense in Mr. Abson's criminal prosecution and because of the policy in Restatement (Second) of Torts § 892C(2) (1979). This argument places unwarranted emphasis on the criminal statutory rape statute and blurs the substantive differences between criminal and civil proceedings.

The argument being made by Mr. Doe and his parents in this case to prevent the trier-of-fact from considering the issue of consent, if followed to its logical conclusion, would permit any victim of statutory rape to recover civil damages notwithstanding the circumstances. While several jurisdictions have adopted this per se civil liability rule,[13] others have not. The courts that have declined to adopt this per se liability rule have recognized (1) that the statutory rape laws do not explicitly create a private right of action for damages, *Beul v. ASSE Int'l, Inc.*, 233 F.3d 441, 450-51 (7th Cir. 2000); *McNamee v. A.J.W.*, 519 S.E.2d 298, 302 (Ga. Ct. App. 1999); (2) that criminal and civil proceedings have different purposes, *Cynthia M. v. Rodney E.*, 279 Cal. Rptr. 94, 97 (Ct. App. 1991); and (3) that it is fundamentally unfair to permit a civil litigant to obtain money damages while preventing the trier-of-fact from considering relevant evidence regarding damages and credibility. *LK v. Reed*, 631 So. 2d 604, 607 (La. Ct. App. 1994); *Doe v. Orangeburg County Sch. Dist. No. 2*, 518 S.E.2d 259, 261 (S.C. 1999). Accordingly, other jurisdictions have concluded that the plaintiff's consent is relevant in civil proceedings and that the defendant may introduce evidence and cross-examine the plaintiff regarding this issue. *Beul v. ASSE Int'l, Inc.*, 233 F.3d at 450-51; *Cynthia M. v. Rodney E.*, 279 Cal. Rptr. at 97; *McNamee v. A.J.W.*, 519 S.E.2d at 303; *LK v. Reed*, 631 So. 2d at 607; *Doe v. Orangeburg County Sch. Dist. No. 2*, 518 S.E.2d at 261; *Parsons v. Parker*, 170 S.E. 1, 2-3 (Va. 1933); *Michelle T. v. Crozier*, 495 N.W.2d 327, 329, 335 n.15 (Wis. 1993).

The Restatement (Second) of Torts § 892C(2) provides that the plaintiff's consent to an illegal act should "not [be] effective as a bar" to a civil action for damages if the conduct involved has been criminalized to protect persons like the plaintiff from harm irrespective of their consent.[14] As we construe this provision, it eliminates consent as a complete defense to a civil action for damages. It does not, however, prevent the trier-of-fact from considering evidence of consent when it is allocating fault or determining the existence and extent of the plaintiff's damages.

Deterrence and punishment for illegal acts should be left to the criminal law. The public's interests are sufficiently protected by the imposition of criminal sanctions. *Zysk v. Zysk*, 404 S.E.2d 721, 722 (Va. 1990). Thus, civil actions for damages should be left to proceed under ordinary tort law principles. Consistent with the doctrine of comparative fault, one of these principles is that a mature minor's conduct, like an adult's conduct, is relevant with regard to fault and damages.

The Tennessee Supreme Court reached this precise conclusion in a civil damage action involving an intoxicated 17-year-old driver who was seriously injured after leaving a restaurant where she had been illegally served alcoholic beverages. The General Assembly outlawed serving alcoholic beverages to minors because it recognized that minors lacked the maturity to use alcohol responsibly. *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn. 1981).

---

[13]*Angie M. v. Hiemstra*, 44 Cal. Rptr. 2d 197, 202 (Ct. App. 1995); *Bohrer v. DeHart*, 943 P.2d 1220, 1227 (Colo. Ct. App. 1996); *Pettit v. Erie Ins. Exch.*, 699 A.2d 550, 557 (Md. Ct. Spec. App. 1997); *Wilson v. Tobiassen*, 777 P.2d 1379, 1384 (Or. Ct. App. 1989); *Robinson v. Moore*, 408 S.W.2d 582, 583 (Tex. Civ. App. 1966).

[14]Restatement (Second) of Torts § 892C(2) states: "If conduct is made criminal in order to protect a certain class of persons irrespective of their consent, the consent of members of that class to the conduct is not effective to bar a tort action."

Notwithstanding the fact that the minor plaintiff had sought and consented to be served alcoholic beverages in violation of the law, the court held that the minor's civil action for damages against the restaurant should be tried using comparative fault principles. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 939 (Tenn. 1994).[15]

## D.

We have determined that the mature minor rule and the Rule of Sevens applies to this case. Accordingly, Mr. Doe, being sixteen years of age at the time the challenged conduct occurred, is presumed to have the capacity to consent to Mr. Abson's sexual contacts. Mama Taori's may, therefore, assert defenses to Mr. Doe's and his parents' various damage claims based on Mr. Doe's purported consent to Mr. Abson's acts, and Mr. Doe and his parents may offer evidence to rebut the effectiveness of his consent based on his age, inexperience, or other factors.[16] Accordingly, the trial court exercised its discretion appropriately when it declined to grant the Tenn. R. Civ. P. 12.06 motion to strike Mama Taori's defense alleging that Mr. Doe had consented to Mr. Abson's sexual contact. Mr. Doe and his parents have not demonstrated that this defense cannot succeed under any circumstance or that it bears no possible relationship to the matters in controversy. They have likewise failed to demonstrate that permitting Mama Taori's to assert this defense will confuse the issues or unduly burden them.

### III.
#### COMPARING THE FAULT OF MR. DOE'S PARENTS

Mr. Doe's parents also take issue with the trial court's denial of their motion to strike Mama Taori's Tenn. Code Ann. § 20-1-119 (1994) defense attributing fault to them as non-parties. They assert that permitting Mama Taori's to assert this defense improperly imputes any potential negligence on their part to Mr. Doe. We have determined that the trial court's decision not to strike this defense at this stage of the proceeding is entirely consistent with one of the central tenets of the Tennessee Supreme Court's comparative fault scheme – that defendants should not be liable for more than their proportionate share of fault.

---

[15]The court based its decision, at least in part, on an earlier opinion holding that the trier-of-fact should be permitted to determine whether a minor who consented to ride as a passenger in an automobile being driven by an intoxicated teenager was contributorily negligent. *Brookins v. The Round Table, Inc.*, 624 S.W.2d at 550. In both *Brookins* and *Cook*, the court concluded that the trier-of-fact could consider the minor's conduct or consent even though the defendant had violated a criminal statute intended to protect minors from their own immaturity and inexperience. As we see it, these more recent decisions signal the court's implicit departure from older cases holding that the trier-of-fact could not consider the conduct or consent of a minor employee who was injured while performing work that violated the child labor laws. *Schilly v. Baker*, 184 Tenn. 654, 662, 202 S.W.2d 348, 351 (1947); *Smith v. Uffelman*, 509 S.W.2d 229, 233 (Tenn. Ct. App. 1973). If these cases were tried today, they would be tried using the principles of comparative fault.

[16]Mr. Doe's complaint contains factual allegations aimed at countering a defense based on consent. He alleges that he was rendered intoxicated and helpless by the marijuana cigarettes containing a knock-out drug supplied by Mr. Abson.

During most of the last century, two related common-law principles shaped our consideration of the liability of parents for injuries to their children caused by the parents' own negligence. The first principle, initially recognized in 1903,[17] was that parents are absolutely immune from negligence actions brought by their own children. *Barranco v. Jackson*, 690 S.W.2d 221, 222 (Tenn. 1985). This parental immunity rule applied only to unemancipated children. *Campbell v. Gruttemeyer*, 222 Tenn. 133, 137, 432 S.W.2d 894, 895 (1968); *Turner v. Carter*, 169 Tenn. 553, 555, 89 S.W.2d 751, 751 (1936). Consistent with its disinclination to grant immunity from liability for negligence,[18] the Tennessee Supreme Court has now significantly limited parental immunity to conduct that constitutes the exercise of parental authority, the performance of parental supervision, and the provision of parental care and custody. *Broadwell v. Holmes*, 871 S.W.2d 471, 476-77 (Tenn. 1994).

The second principle is that the negligence of a parent cannot be imputed to an infant who is incapable of being negligent. *Whirley v. Whiteman*, 38 Tenn. (1 Head) 610, 620 (1858). However, this principle, commonly referred to as imputed contributory negligence, does not apply when a parent is seeking damages in his or her own right, *Bamberger v. Citizens' St. Ry. Co.*, 95 Tenn. 18, 37, 31 S.W. 163, 168 (1895), or when the parent is the sole beneficiary of the deceased child's estate. *Smith v. Henson*, 214 Tenn. 541, 547, 381 S.W.2d 892, 895 (1964). Whether the principle of imputed contributory negligence has survived the Tennessee Supreme Court's adoption of comparative fault in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), is open to question in light of *Herbert v. Brazeale*, 902 S.W.2d 933 (Tenn. Ct. App. 1995). The *Herbert* case involved two children who were injured while riding as passengers in their mother's automobile when it was struck by a tractor trailer truck. This court affirmed the trial court's decision to replace an imputed contributory negligence instruction with a comparative fault instruction directing the jury to compare the fault of the truck driver and the injured children's mother. The court based its decision on the principle that "a defendant may be held liable only for his or her proportionate share of a judgment and that the jury must assess the percentage of negligence of all parties potentially responsible for the injuries or damages involved." *Herbert v. Brazeale*, 902 S.W.2d at 941.

In light of the current procedural posture of this case, there are three reasons why the principle of parental immunity did not require the trial court to strike Mama Taori's defense seeking to compare its fault with that of Mr. Doe's parents. First, parental immunity does not apply when a minor is emancipated. Emancipation is a question of fact. *Glover v. Glover*, 44 Tenn. App. 712, 727, 319 S.W.2d 238, 244 (1958). Should Mama Taori's substantiate its claim that Mr. Doe was emancipated when the sexual contact with Mr. Abson occurred, then the principle of parental immunity will be irrelevant in these proceedings. Second, even if Mama Taori's cannot substantiate its claim that Mr. Doe was emancipated, the doctrine of parental immunity will not prevent comparing Mama Taori's fault and Mr. Doe's parents' fault with regard to the parents' own damage claims. *Bamberger v. Citizens' St. Ry. Co.*, 95 Tenn. at 37; 31 S.W. at 168. Third, even if the principle of parental immunity applies with regard to Mr. Doe's own damage claims, parental

---

[17]*McKelvey v. McKelvey*, 111 Tenn. 388, 390-91, 77 S.W. 664, 664 (1903).

[18]*Fain v. O'Connell*, 909 S.W.2d 790, 794 (Tenn. 1995).

immunity will not prevent comparing the fault of Mama Taori's and Mr. Doe's parents because the Tennessee Supreme Court has now explicitly held that, except for worker's compensation cases, "fairness to the parties" requires that fault be attributed to immune parties because the close fit between fault and liability will be lost "when some participants to an act of negligence are excluded from the apportionment of fault." *Dotson v. Blake*, 29 S.W.3d 26, 28 (Tenn. 2000); *Carroll v. Whitney*, 29 S.W.3d 14, 20 (Tenn. 2000).

Similarly, the doctrine of imputed contributory negligence did not require the trial court to strike Mama Taori's comparative fault defense. This doctrine has been subsumed into the comparative fault scheme mandated by the *McIntyre v. Balentine* decision. *Herbert v. Brazeale*, 902 S.W.2d at 941. It is never error for the trier-of-fact to be fully informed regarding the relevant and competent facts giving rise to a claim for damages. *Carroll v. Whitney*, 29 S.W.3d at 18. Thus, if Mama Taori's can marshal evidence to prove that Mr. Doe's parents did not act appropriately to protect their child from sexual abuse at the hands of Mr. Abson, the jury should be entitled to hear it and to weigh it against the other evidence presented both in support of and in opposition to Mr. Doe's and his parents' damage claims.

## IV.
### MAMA TAORI'S WORKERS' COMPENSATION EXCLUSIVITY DEFENSE

Mama Taori's has presented two other arguments countering Mr. Doe's and his parents' assertions that the trial court erred by denying their motion to strike certain of Mama Taori's defenses. It argues that even if the trial court's denial of the motion to strike was error, the error was harmless because Mr. Doe's claims are barred by the workers' compensation exclusive remedy provision in Tenn. Code Ann. § 50-6-108(a) (1999) and because it cannot be liable vicariously for Mr. Abson's conduct since he was not acting within the scope of his employment.

The scope of the issues raised on Tenn. R. App. P. 9 and 10 appeals differs from the scope of the issues that can be raised on appeals as of right under Tenn. R. App. P. 3. Subject to the limitations in Tenn. R. App. P. 3(e) and 13(b), both the appellant and the appellee have broad latitude with regard to the issues they can raise on a direct appeal. The same is not the case for interlocutory appeals under Tenn. R. App. P. 9 or extraordinary appeals under Tenn. R. App. P. 10. *Heatherly v. Merrimack Mut. Fire Ins. Co.*, No. M1998-00906-COA-R10-CV, 2000 WL 1701984, at *2 (Tenn. Ct. App. Nov. 15, 2000), *perm. app. filed* (Tenn. Jan. 16, 2001).

For interlocutory appeals, the only issues that may be raised are those certified in the trial court's order granting permission to seek an interlocutory appeal and in the appellate court's order granting the interlocutory appeal. *Tennessee Dep't of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975); *Pass v. Shelby Aviation, Inc.*, No. W1999-00018-COA-R9-CV, 2000 WL 388775, at *6 (Tenn. Ct. App. Apr. 13, 2000) (No Tenn. R. App. P. 11 application filed); *Kent v. Edwards & Assocs., Inc.*, No. E1999-00399-COA-R9-CV, 2000 WL 124614, at *1 (Tenn. Ct. App. Jan. 25, 2000), *perm. app. denied* (Tenn. June 12, 2000); *Montcastle v. Baird*, 723 S.W.2d 119, 122 (Tenn. Ct. App. 1986). However, trial courts may not certify questions to an

appellate court that have not actually been raised and decided in the trial court. Permitting this practice would require appellate courts to consider hypothetical issues that are not a proper subject for appellate review. Judicial economy prompts us to avoid rendering advisory opinions or deciding abstract legal questions. *Super Flea Mkt. v. Olsen*, 677 S.W.2d 449, 451 (Tenn. 1984); *Lawrence v. Stanford*, 655 S.W.2d 927, 929-30 (Tenn. 1983); *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994).

The trial court's decision to deny Mr. Doe's and his parents' Tenn. R. Civ. P. 12.06 motion to strike was premised on its conclusion that the principles of comparative fault permitted Mama Taori's to assert comparative fault defenses against both Mr. Doe's and his parents' claims for damages. There is no indication that the trial court ever addressed the "exclusive remedy" or "scope of employment" arguments now being made by Mama Taori's. We granted an interlocutory appeal to determine whether the doctrine of comparative fault justified the denial of the motion to strike. Accordingly, we decline to address the additional issues Mama Taori's seeks to present on appeal. These issues may be taken up with the trial court after the case is remanded.

## V.

We affirm the denial of the motions to strike Mama Taori's affirmative defenses and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to John Doe and his parents, Robert and Jane Doe, jointly and severally, and their surety, for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

-13-